## Williams v. Golden & Crick, Appellants.

*Corporations—Foreign corporations—Business within the State —Failure to register—Acts of April 22, 1874, P. L. 108, and June 1, 1889, P. L. 420, Section 19.*

1. A foreign corporation whose principal office is located and whose capital is invested without the State and which does no business of any kind within the State other than negotiating and performing contracts for the furnishing and setting up of fixtures manufactured without the State is not doing business within the State within the meaning of the Acts of April 22, 1874, P. L. 108, and June 1, 1889, P. L. 420, Section 19, relating to foreign corporations and without having registered may bring actions in the courts of this State on such contracts made and performed here.

*Contracts—Building contracts — Subcontractors — Penalty for delay—Construction—Intention.*

2. A contract between a contractor and a subcontractor for the furnishing and setting up of ornamental fixtures by the latter, and providing that the contractor upon the subcontractor's failure to perform may complete the work and that the subcontractor in

such case shall pay a penalty for every day's delay "the......pen-alty......remain in force for......every day's delay after Nov. 15......" will not require a subcontractor to pay the penalty for delay after November 15, where he has satisfactorily completed his contract, the intention of the contract being that the subcontractor should only be liable for a penalty where the contractor is required to complete the work.

Argued Oct. 15, 1914. Appeal, No. 145, Oct. T., 1914, by defendants, from judgment of C. P. Allegheny Co., Oct. T., 1912, No. 890, on verdict for plaintiff in case of John Williams, Incorporated, v. James T. Golden and Linville H. Crick, partners doing business as Golden & Crick. Before Brown, Potter, Elkin, Stewart and Moschzisker, JJ. Affirmed.

Assumpsit for balance due on a contract for work, labor and materials.

Shafer, J., filed the following opinion:

The defendants, Golden & Crick, are general contractors and had a contract to make certain alterations and improvements in the banking house of the Duquesne National Bank in Pittsburgh, Pa. A very considerable part of these alterations consisted of ornamental metal work in the banking room, being screens, doors and stair case of bronze with some ornamental iron work. John Williams, Incorporated, the plaintiff, is a corporation of the State of New York, engaged in making and putting up such bronze ornamental work throughout the United States. Through a Mr. Pitcairn, a resident of Pittsburgh and described in the evidence as a broker in this kind of work, negotiations were had between the plaintiff and defendants for the doing of the metal work required in the Duquesne National Bank building by the plaintiff, and a contract was entered into which was drawn up in Pittsburgh, signed in Pittsburgh by Golden & Crick and signed in New York by the plaintiff, a copy of which is contained in the statement of claim. This contract recites that the defendants have a contract with.

the Duquesne National Bank to make certain alterations in their building, and have accepted the bid of plaintiff as subcontractor for the bronze art metal work, and provides that for the consideration of $16,800.00 the plaintiff as subcontractor shall furnish the necessary materials, labor, etc., to do the work specified in a good, workmanlike manner in conformity with the contract, plans, and specifications prepared by the architect; that they will begin the work at a certain time, employ an adequate force of competent workmen, carry forward the work with diligence until it is fully completed, and that upon failure to furnish the material or keep a sufficient number of men at work, or to perform the contract as specified, the defendants as contractors may, after three days' notice, enter upon and take charge of the work and complete the same, using such material as is on hand if they choose to do so, and that any money remaining in the hands of the contractors at the time they find it necessary to take charge of and complete the work shall be retained until the work is completed, at which time an account shall be stated, and from any balance in the hands of the contractors all the costs and expenses incurred by them in completing the work and twenty dollars a day for each day they are delayed shall be deducted, and the remainder paid to the plaintiff, and that if the balance remaining in the hands of the contractors at the time of taking charge of the completion of the work is insufficient to pay the cost of completing it and twenty dollars a day for delay then the plaintiff as subcontractor agrees to pay the difference in cash. The contract then continues: "The above penalty of twenty dollars per day to be and remain in force for each and every day's delay after November 15, 1910, until December 1, 1910, and one hundred dollars per day for each day delay after December 1, 1910." The work which the plaintiff agreed to do was not finished until 28th of January, 1911. It was finished by the plaintiff itself, and the defendants did not take charge of the

work and complete it themselves under the terms of the contract. Except as to the time, the work was admittedly done according to the contract and was to the satisfaction of the owner and accepted by the owner's architect. During the progress of the work the defendants paid to the plaintiff about one-half of the contract price, and this suit was brought to recover the balance.

The contention of the defendants is that the plaintiff, being a New York corporation not registered in Pennsylvania under the Act of April 22, 1874, P. L. 108, cannot maintain an action for the price of work done by it, and that even if it could, it is bound to allow a deduction from its claim of the sum of $6,200.00 for the delay from November 15th to January 28th at the rate of twenty dollars a day for part of the time and one hundred dollars a day for the balance. Whether the plaintiff can recover or not depends upon the question whether in making the contract in suit and doing the kind of work done by it under the circumstances of the case it can be said to have been doing business in the State of Pennsylvania without registration. It appeared from the evidence that the company has its offices, drafting rooms, workshop and foundries all in the State of New York, and that it has none of its capital invested anywhere except in the State of New York, and that its business consists in making drawings and moulds for ornamental bronze work and casting the same to conform with the specifications for various buildings, having practically no stock of finished products on hand, but making each casting to fit the particular place designed for it. It further appears that when these castings are thus made they are sent by freight, consigned to the company itself at the place where they are to be put up, and that some skilled workmen are sent from the home office to put up and install the work in place, it being testified and not denied that this was a matter which required skill and a knowledge of the work such as would not ordinarily be found among the workmen engaged in ordinary building,

and that in addition to these workmen some laborers were hired at the place where work was to be so put up, to assist in handling and putting it up; and this was the course pursued in the present case. It also appeared from the testimony that the plaintiff was not the only corporation engaged in the making of ornamental metal work of this kind, but that there were three or four other establishments of a similar kind in the United States. It further appeared that the plaintiff had been engaged for many years in the same kind of work and had put the same kind of work into bank buildings and others in various parts of Pennsylvania during a number of preceding years, upon contracts made special for each case in substantially the same manner as the contract in the present case. We are clearly of opinion that this does not show a doing of business in Pennsylvania within the meaning of the registration acts. The plaintiff had not established an office or transferred any part of its capital to the State, nor carried on its ordinary business here. If it had merely taken orders to make and ship to Pittsburgh the ornamental work sued for, there would of course be no doubt that it had a right to do that without registration. We are unable to see how the fact that in addition to sending the material it sends its skilled employees to set it up can make any difference. We are therefore of opinion that the defendant is not entitled to judgment non obstante veredicto.

As to the claim that the defendant should have credit for $6,200.00 for delay, which is a ground for the motion for a new trial, that not being the whole of the plaintiff's claim, we are of opinion that the plaintiff is not subject to the terms of the contract between the owner and the general contractor in this respect, his contract with the contractor being complete in itself and referring to the defendant's contract with the owner only in so far as it relates or refers to the work to be done and the materials to be furnished by the subcontractor. Under

the express terms of the contract sued upon a penalty for delay is provided for only in case the contractors choose to take the work out of the hands of the subcontractor and finish it themselves.

Verdict for plaintiff for $8,541.54, and judgment thereon. Defendants appealed.

*Errors assigned* were answers to points, the refusal of the court to direct a verdict for defendants and to enter judgment for defendants n. o. v.

*J. McF. Carpenter,* for appellants.

*John C. Bane,* for appellee.

PER CURIAM, January 2, 1915:

The facts in this case appear in the opinion of the learned court below, refusing a new trial and denying defendants' motion for judgment non obstante veredicto. The questions raised on this appeal having been properly disposed of in that opinion, the judgment is affirmed on it.

Judgment affirmed.