Philadelphia Gear Works, Appellant, *v.* Read Machinery Co., Inc.

Argued November 15, 1939.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, Rhodes and Hirt, JJ.

*Edwin Fischer,* for appellant.

*Dwight V. Dowley,* with him *Rowland C. Evans, Jr.* and *Krusen, Evans & Shaw,* for appellee.

OPINION BY PARKER, J., April 19, 1940:

The defendant, a domestic corporation having its principal place of business in York County, was sued by plaintiff in an action in assumpsit in Philadelphia County and the court below on petition of defendant, after an answer had been filed, depositions had been taken and arguments had been heard, made absolute a rule to show cause why the service and return should not be set aside. The sole question involved in this appeal by the plaintiff is whether the defendant corporation had so conducted its business in respect of quantity and quality that it was amenable to such process in Philadelphia. The defendant followed the proper procedure to have the question determined: *Vaughn v. Love,* 324 Pa. 276, 188 A. 299.

An answer to the problem involves a consideration of the precise evidence produced in support of the motion. There is no controversy as to the facts. The defendant is engaged in the manufacture of baking machinery, including ovens and chemical equipment, and has its principal office and manufacturing plant in York County. It rents by written agreement, in its own name, office space or desk room for two of its salesmen in a building on North Broad Street in Philadelphia. In that office there are a desk, a single file case and some chairs rented to it by the owner of the building. The directory listing of the building contains the name Read Machinery Company and there is a telephone listed in the same name. The classified section of the Philadelphia Bell Telephone Directory contains this advertisement: "Bakers' Machinery, Read Machinery

Company, 401 North Broad Street. Telephone # Walnut 5696." The defendant does not have a bank account or warehouse in Philadelphia. It employs on a commission basis two salesmen who do not give their services exclusively to it but are at liberty to solicit orders for other manufacturers whose business does not interfere with that of the defendant. The territory of the two salesmen embraces New Jersey, Delaware and seven counties in the southeastern part of Pennsylvania. The company does business throughout the United States and in foreign territory but it does not appear what proportion of its sales originates in Philadelphia.

In connection with and preparatory to the sale of machinery the salesmen are required to take measurements necessary in the installation of equipment. They do not, however, take any part in the installation of the machinery but mechanics are sent directly from the plant for that purpose. The salesmen also assist in the collection of delinquent notes and receive complaints from customers. In the latter case one of them visits the customer at his plant, ascertains what the difficulty is and then advises the home office and any further connection of the defendant with such complaints is conducted from the home office at York. The salesmen are not authorized to close any orders for machinery or equipment or for repairs until the orders are accepted by the home office.

While at common law "a corporation could be sued only in the jurisdiction where it had its legal domicile, that is, its principal place of business", the rule has been changed by statute. In the late case of *Walde v. Bowers Bat. Mfg. Co., Inc.,* 337 Pa. 97, 99, 10 A. 2d 405, Mr. Justice STERN approved the following statement of the present general rule: "Process may be issued against a domestic corporation in any county where corporate property is situated in whole or in part, or where the corporation conducts a substantial part of its business, exercises its franchises and locates

the whole or part of its property." That case also approves the general statement of the rule in *Lobb v. Pennsylvania Cement Co.*, 285 Pa. 45, 47, 131 A. 725: "The guiding principle of the decisions is that a domestic corporation may be served in any county where it habitually carries on a substantial part of its business or exercises its franchises and has property."

There is nothing in the Act of July 9, 1901, P. L. 614 (12 PS §291) to change the common law or the prevailing rule or to affect the jurisdiction of the court, but that act merely prescribes how service may be had: *Park Bros. & Co. v. Oil City Boiler Works*, 204 Pa. 453, 54 A. 334.

*Walde v. Bowers Bat. Mfg. Co., Inc.*, supra, is also authority for the proposition that the right to bring suit against a corporation in a county other than that of its principal office is not limited to situations where the corporation has property in the second county. Speaking with reference to the Act of March 17, 1856, P. L. 388 (12 PS §1304) the court said (p. 102) : "While the word 'property' in the Act of 1856 should not be held to refer to property which is merely stored in a warehouse or otherwise *passively* located in another county than that where the principal place of business of the corporation is located, it certainly includes property which is *actively* used in the course of the business operations of the corporation, irrespective of whether such property consists of fixtures and machinery, or of a stock of merchandise the sale of which is the object of the corporate business. Indeed, when the word 'property' is thus construed, there is, from a practical standpoint, no difference between a requirement that a corporation have such property in the county and a requirement that the corporation do business there, so that either of these circumstances becomes, as our cases hold, sufficient justification for the commencement of suit and service of process upon the corporation in such county."

The plaintiff does not claim that the defendant had any tangible property in Philadelphia, and the depositions show that it had no intangible property, such as a bank account, in that county sufficient to give jurisdiction to the court of common pleas in that county. It relies upon the claim that defendant was habitually transacting a substantial part of its business there. On the other hand, the defendant insists that such acts as were performed by it through its agents and employees in Philadelphia were not of such a character as to constitute "doing business" there and make it amenable to process in that jurisdiction. The plaintiff depends chiefly on the facts that the defendant rented desk room in an office building in Philadelphia and paid for telephone service there; that the office, so-called, was used exclusively as headquarters for its two salesmen who solicited orders and received complaints with reference to the operation of machinery sold by defendant; that defendant frequently sent its mechanics to Philadelphia for the purpose of installing machinery manufactured in its plant in York County and sold by it there and for the purpose of making repairs when such repairs required the service of a mechanic expert in repairing the baking machinery manufactured by defendant; and that the defendant's employees spent from one day to three months, in the case of one large job, in installing machinery.

The appellate courts of this state have had frequent occasion to pass upon questions involving a consideration of whether a domestic or foreign corporation could be made to answer common law complaints in counties other than the one where its principal office was located. While the statutes dealing with the jurisdiction of the courts in respect to foreign and domestic corporations are not identical, they are each concerned with questions as to the quality and quantity of service necessary to constitute a "doing business" in a given locality, and the Supreme Court has shown a settled tendency to

view both situations in the same light. In *Eline v. Western Maryland Ry. Co.*, 253 Pa. 204, 209, 97 A. 1076, that court said: "The construction which we place upon the act in question makes for accord with the rule as to domestic corporations ......; or, at least, it avoids a more partial rule for foreign than domestic corporations." Also see remarks of the court on the same subject in *DeHaas v. Penna. R. R. Co.*, 261 Pa. 499, 502, 104 A. 733. Those decisions, as well as the ones which deal with a consideration of the extent and quality of service which must be transacted before a foreign corporation is required to register in this state, are germane and we will refer to such cases without further comment.

It would appear to be well settled that the *mere* solicitation of orders in a county and the renting of an office there as a headquarters for salesmen who solicit orders or patronage do not constitute the doing of such business as to make a corporation subject to process in that county: *Shambe v. D. & H. R. R. Co.*, 288 Pa. 240, 248, 135 A. 755; *Green v. Chicago, B. & Q. Rwy. Co.*, 205 U. S. 530, 27 S. Ct. 595; *Otto A. C. Hagen Corp. v. Empire Sheet & Tin Plate Co.*, 337 Pa. 232, 11 A. 2d 144. A comparison of the opinions in the Shambe case and *Lobb v. Penna. Cement Co.*, supra, throws much light upon the immediate question with which we are concerned and furnishes an answer. The defendant corporation in the Shambe case operated a railroad in the northeastern portion of this state but had neither tracks nor roadbed in Philadelphia. It had complied with the statute authorizing it to do business in Pennsylvania. For ten years it rented rooms in an office building in Philadelphia for an agency known as the "General Southern Freight Agent." The doors and windows displayed the "D. & H." sign and the stationery, letterheads, envelopes, etc., used there were the official stationery of the company. It had a telephone in the company name and the

rooms were occupied by a general agent who employed
seven subordinates, four of whom were attached to the
Philadelphia territory and three to the southern dis-
trict, all of the employees being paid from the home
office in New York. The principal business transacted
in Philadelphia was the solicitation of freight. One
million out of twenty-two million tons of freight origi-
nated with the agency. Complaints were received as
to service and forwarded to New York and at times
lost freight was traced through the office. All con-
tracts were required to go to the principal office in
New York for confirmation. It was held that the solici-
tation of freight and the renting of the office in the
name of the company, taken with the other circum-
stances, did not constitute doing business in Philadel-
phia.

In the Lobb case the defendant, a corporation, had
its plant and principal office at Bath, in Northampton
County, and was sued in Philadelphia County. The
facts are thus stated by the Supreme Court (p. 46):
"It maintains an office in New York and has a sales
office in Philadelphia in charge of a district sales man-
ager under whom there are four salesmen and a stenog-
rapher. This Philadelphia office is held by lease in the
company's name and the furniture therein belongs to
it, as do four automobiles used by the salesmen operat-
ing from the Philadelphia office. The district sales
manager has charge of a selling territory, which not
only comprehends the State of Pennsylvania, but, in
addition, Maryland, Virginia, Delaware, the District of
Columbia and the lower part of New Jersey. The sales-
men working under him from the Philadelphia office
solicit business in the territory named, report their sales
to him and he forwards the reports to New York,
whence they are transmitted to the plant at Bath to be
filled. Complaints are investigated by the salesmen.
Not only do the salesmen solicit orders, but they dis-
tribute advertising matter and follow up accounts due

the corporation. Occasionally checks in payment of invoices are sent to the Philadelphia office, which forwards them to the office in New York. During the year 1924, the aggregate sales through the Philadelphia office amounted to 170,605 barrels of cement, which was approximately one-thirteenth of the total sales of the company. The office in Philadelphia had been maintained for six years prior to the service of the writ." The lower court set aside the summons on the ground that the mere maintenance of an office by a corporation in one county to solicit orders did not constitute transacting business in that county so as to render the corporation amenable to suit. Mr. Justice (now Chief Justice) SCHAFFER said (p. 48) : "We have no intention to depart from this rule, but in the pending case the defendant did much more than this, as the facts heretofore recited demonstrate; what it did in our opinion constituted such a doing of business in Philadelphia as made it liable to process there." The effect of this was to reaffirm what the court had said in the Shambe case with reference to soliciting orders from an office in another county.

Our first proposition that the mere solicitation of orders and the mere hiring of an office in a county do not alone, without more, constitute the doing of business in such county would seem to be established. We will therefore contrast in other particulars the transactions in Philadelphia in the Lobb case and the present case. In the former there was a manager in charge of a stenographer and four salesmen who reported their contracts of sale to him; here, there was no manager in charge of the Philadelphia office and no stenographer. In the former, the salesmen reported the contracts they had made to the manager at the office in Philadelphia, while here the two salesmen reported orders received by them not to any Philadelphia office but to the home office at York, and the orders did not become contracts until they were accepted by the home office. In the

former case, accounts were followed up, collections were made, and checks in payment of invoices were at times sent to the Philadelphia office; here, the salesmen did nothing more than assist in the collection of notes but the actual collections were made through a bank at York (record, 22a); they handled no money. In the Lobb case the company owned four automobiles which were used by the salesmen and operated from the Philadelphia office under direction of the manager, while here the company had no automobiles and did not even own the office furniture. In fact, the salesmen worked on a commission basis only and furnished their own cars. Complaints were handled by the two commission men just as sales were treated. They ascertained what the complaints were and forwarded them to York for attention and from that point all arrangements were made for the service. Such service was gratuitous and the salesmen received no compensation for it from the customer or the defendant.

In short, in the Lobb case the defendant transacted habitually through its manager a substantial part of its business (one-thirteenth of its total sales) from the office in Philadelphia as a headquarters, while in the present case the business was all actually transacted from York. The office in Philadelphia was a mere medium for transmission of orders and complaints to the home office. There was no one at Philadelphia authorized to speak for the company. The situation was not materially different than if the two salesmen had not maintained any headquarters but had used the telephone as a medium of communication between the office in York and the customer. The acts performed in Philadelphia were mere incidents to the business conducted at York. It seems clear to us that the present controversy is controlled by the Shambe case and not by the Lobb case.

It remains to inquire whether the sending of mechanics to Philadelphia for the purpose of installing

machinery manufactured at York or the making of repairs to such machinery constituted "doing business" in that county. In *Delaware R. Q. & Constr. Co. v. B. & N. Pass. Rwy. Co.*, 204 Pa. 22, 53 A. 533, it was held that a foreign corporation, a construction company, which came into this state and constructed ten miles of roadbed, using a large number of men over a period of six months and "employing a large amount if not all of its capital" in such work, was transacting business in Pennsylvania. In *Hoffman Construction Co. v. Erwin*, 331 Pa. 384, 200 A. 579, the plaintiff, a foreign corporation, without an office or resident agent in the state, took a contract to do certain landscaping, grading, and road construction on the defendant's estate in Bucks County, Pennsylvania. It moved in its equipment, hired some laborers in that county, and spent about four months in doing the work. It was held that it was "doing business" in, Bucks County. It will be observed that in each of those cases the corporation was not doing something that was merely incidental to the purpose for which it was organized, but it was engaged in the doing or the performance of the very functions for which it was organized. If it was not doing business in Pennsylvania it was not doing business anywhere, for it could not do more in carrying out the purposes of its organization than it did here.

Contrast those cases with *John Williams, Inc. v. Golden & Crick*, 247 Pa. 397, 93 A. 505. There the plaintiff, a foreign corporation not registered to do business in this state contracted with defendant to manufacture and install in a banking house in Pittsburgh certain bronze and ornamental work. The fixtures were designed and fabricated at plaintiff's plant in New York. The castings had to be specially manufactured at its plant to fit into the building. When finished they were consigned to plaintiff in Pittsburgh and there plaintiff's skilled mechanics spent considerable time in installing them. They also hired some laborers in Pitts-

burgh and had frequently done just such work on a large scale at other places in Pennsylvania. The court held it was not necessary for the plaintiff to register in Pennsylvania, saying (p. 401): "We are clearly of opinion that this does not show a doing of business in Pennsylvania within the meaning of the registration acts. The plaintiff had not established an office or transferred any part of its capital to the State, nor carried on its ordinary business here. If it had merely taken orders to make and ship to Pittsburgh the ornamental work sued for, there would of course be no doubt that it had a right to do that without registration. We are unable to see how the fact that in addition to sending the material it sends its skilled employees to set it up can make any difference."

We think the present case is even clearer for the machinery was all manufactured and prepared ready for installation when it was shipped to Philadelphia and installed in bakeries. Part of this equipment was of such a nature that it required the services of those having special knowledge of the particular machines in order either to set them up or to correct defects in operation. In fact, the company did not send its mechanics to Philadelphia if the customer could have the work done itself by local mechanics. The installation and repairing of the machinery were mere incidents to its manufacturing business just as in the Williams case, and the service was not of the same nature as that performed by the construction companies in building a railroad or in landscaping a large estate. We therefore hold that the defendant was not habitually engaged in performing a substantial part of its business in the city of Philadelphia and was not amenable to process there.

The order of the court below is affirmed.