### Alan Wood Steel Company, Appellant, *v.* Philadelphia School District.

456

Argued December 1, 1966. Before BELL, C. J., MUS-
MANNO, JONES, EAGEN, O'BRIEN and ROBERTS, JJ.

*Park B. Dilks, Jr.,* with him *Morgan, Lewis &
Bockius,* for appellant.

*Joseph W. Marshall,* with him *Edward B. Soken,*
for appellee.

OPINION BY MR. JUSTICE JONES, May 24, 1967:

The Department of Collections of the City of Phila-
delphia, acting as tax collector for the School District
of Philadelphia (School District) in December, 1962,
mailed to Alan Wood Steel Company (taxpayer), a
Pennsylvania corporation, at its principal office in Con-
shohocken, Montgomery County, a bill for a mercan-
tile license tax of $73,654.40 and a general business tax
of $24,550.45, based upon an estimate of taxpayer's re-
ceipts during the years 1958-1962 from sales to its cus-
tomers located in Philadelphia.[1] Upon receipt of the
bill for the general business tax, the taxpayer filed an
appeal to the Court of Common Pleas No. 4 of Phila-

---

[1] The mercantile license tax is not involved in this appeal.
Upon receipt of the mercantile license tax bill, the taxpayer filed
a petition for review of the assessment of such tax with the Phila-
delphia Tax Review Board and the Board continued the matter,
at the request of the City of Philadelphia, until liability of the
taxpayer for the general business tax could be finally determined.

delphia County upon the grounds that: (a) the venue was improper since the School District could not validly institute an action in Philadelphia County to collect this tax by simply mailing a bill to the taxpayer located in Montgomery County; (2) the assessment was erroneous, in fact and in law, because the taxpayer was not engaged in business in Philadelphia and did not make sales in that city.

The matter came before Judge THEODORE REIMEL who directed that depositions be taken. These depositions reveal the following facts and constitute the record before us: (1) prior to June 30, 1957, the taxpayer maintained a Philadelphia office and paid both the general business and the mercantile license tax; (2) by reason of a decline in business, the taxpayer gave up its branch office in Philadelphia and, thereafter, neither filed returns nor paid taxes, (3) the taxpayer's sole manufacturing plant is in Conshohocken, Montgomery County, it has mines in New Jersey and maintains solicitation or promotional offices in Bala Cynwyd, Montgomery County and in four out-of-state locations; (4) since June 30, 1957, the taxpayer has not maintained in Philadelphia any plant, manufacturing facility, warehouse, stock or inventory of goods, office or place of business, and has not entered into any sales contracts therein; (5) the taxpayer, which manufactures and sells steel and steel products, normally receives orders for its products from customers, by telephone or mail, at its manufacturing plant and general office in Conshohocken and, if any orders are telephoned or mailed to its promotional offices, such orders are forwarded to the Conshohocken office for acceptance or rejection, the promotional offices lacking any authority to accept or reject orders; (6) no C.O.D. sales are made, all sales being made F.O.B. Conshohocken; (7) delivery of taxpayer's products is made by facilities not owned by the taxpayer, the freight being

paid by the customer; (8) twenty-five "promotion men" work for the taxpayer of whom only three work out of the Bala Cynwyd office and these three men spend not more than 30% of their time in promoting the taxpayer's relationship with Philadelphia customers; (9) none of the "promotion men" live in Philadelphia and they are simply "good-will agents" without any authority to take orders from customers, to make credit investigations, or to handle collections; (10) if a complaint concerning taxpayer's products is made, the taxpayer may send a "promotion man", or, if engineering knowledge is necessary, one of its fifteen metallurgists to investigate and ascertain the facts; (11) none of the taxpayer's metallurgists live in Philadelphia and "only a couple" of the metallurgists spend any time, albeit "very slight", in Philadelphia; (12) the taxpayer holds its corporate meetings in Conshohocken, maintains its bank account with the Philadelphia National Bank with which it deals through the bank's Conshohocken branch, maintains two listings in the telephone directory setting forth its Conshohocken and Bala Cynwyd addresses and advertises in trade journals of general circulation, some of which "infiltrate into the city".

On the basis of the depositions, Judge WEINROTT denied the taxpayer's appeal and, upon a petition under Rule 68½ of this Court, we granted certiorari. Upon this appeal, two issues are presented: (a) was the venue proper? and (b) is the taxpayer liable for the payment of a general business tax?

The general business tax (levied under Act of May 23, 1949, P. L. 1669, 24 P.S. §584.1 et seq.) is imposed by the Commonwealth of Pennsylvania for the School District of Philadelphia.[2] This tax is levied upon "car-

---

[2] Since the members of the Board of Education of the School District are appointed, not elected, officers, the School District lacks the power to tax. See: *Wilson v. Philadelphia School District*, 328 Pa. 225, 195 A. 90 (1937).

rying on . . . within a school district . . . any trade [or] business . . . or making sales to persons within such school district" and is measured by receipts "received in or allocable to a school district . . . by reason of any sale made" in the school district. "Business" is defined as: "Carrying on or exercising for gain or profit within a school district of the first class, any trade, business, including financial business as hereinafter defined, profession, vocation, or commercial activity, or making sales to persons within such school district". (Section 1, 24 P.S. §584.1). "Receipts" are defined as: "Cash, credits, property of any kind or nature, received in or allocable to a school district of the first class from any business or by reason of any sale made . . . or services rendered or commercial or business transaction had within a school district of the first class". (Section 1, 24 P.S. §584.1).

Section 7(b) of the Act of 1949, supra, 24 P.S. §584.7(b) provides, inter alia: "Any person aggrieved by any *decision of the collector* shall have the right of appeal to the court of common pleas, as in other cases." (Emphasis added). Initially, the taxpayer contends that mailing of the tax assessment by the tax collector to the taxpayer did not constitute a "decision of the collector" within the statutory provision and, therefore, the billing was advisory only, the taxpayer was not required to appeal and the present proceeding should terminate. This contention is without merit. No other rational construction can be given to the assessment of this delinquent tax and the mailed notice thereof other than as a "decision of the collector" within the legislative intendment. The assessment by the tax collector of the tax constituted a ruling that taxes for the pertinent years were then due and owing to the School District from the taxpayer.

Taxpayer next urges that Philadelphia County lacked venue of this action. Basically, the resolution

of this issue requires a determination as to which of two Rules of Civil Procedure is presently applicable. Pa. R. C. P. 2179(a) provides, in pertinent part: "Except as otherwise provided by an Act of Assembly or by subdivision (b) of this rule, a personal action against a corporation or similar entity may be brought in and only in (1) the county where its registered office or principal place of business is located; or (2) a county where it regularly conducts business . . . ." Pa. R. C. P. 2103(b), upon which the School District relies, provides: "Except when the Commonwealth is the plaintiff or when otherwise provided by an Act of Assembly, an action against a political subdivision may be brought in and only in the county in which the political subdivision is located."

Arguing that the taxpayer has minimal contacts with Philadelphia and relying upon the case law represented by *Shambe v. Delaware & Hudson R.R. Company*, 288 Pa. 240, 135 A. 755 (1927), *Lutz v. Foster and Kester Co., Inc.*, 367 Pa. 125, 79 A. 2d 222 (1951) and *Philadelphia Gear Works v. Read Machinery Co., Inc.*, 139 Pa. Superior Ct. 584, 12 A. 2d 793 (1940), the taxpayer argues that, since it does not regularly conduct business in Philadelphia County, Rule 2179 (a)(2) does not apply so as to establish venue of the instant action. Such argument is not presently relevant because it clearly appears that Rule 2103(b), not Rule 2179(a)(2), is applicable. The instant action is against a political subdivision, to wit, the School District. It could not be otherwise under the factual posture presented. The tax collector for the School District made an assessment of a tax against the taxpayer; to dispute the validity of such assessment the taxpayer instituted an action against the School District, a political subdivision. The appeal from the assessment by the taxpayer constituted an action against a political subdivision the venue of which, under Rule

2103(b), could only be in the county in which the political subdivision is located. In our view, Philadelphia County, in which the School District is located, is the proper place of venue for this action.[3]

Moreover, the taxpayer, voluntarily submitted itself to the jurisdiction of Philadelphia County. By the institution of its action the taxpayer waived the issue of venue. We agree with the court below: "Since the taxpayer itself chose the venue we believe it to have waived its position in that regard . . . ."

On the other hand, if the action by the School District in making an assessment of these delinquent taxes be deemed an action by it against the taxpayer then Rules 2179(a)(3) or (4) would clearly govern since the cause of action arose in Philadelphia and the transactions or occurrences which gave rise to the tax must have occurred in Philadelphia otherwise there could be no liability for the tax.

The Act of 1949, supra, authorizes a school district of the first class to levy and collect an annual tax, in addition to any other school tax, for general public school purposes. Such annual tax is authorized to be

---

[3] See: *Danchison v. Ryon*, 88 Pa. D. & C. 129, (1954), wherein the court said: "In this State, the common-law rule did not depend alone on a public policy against calling municipal officers all over the State to defend actions, while their official duties at home remained unattended to. Equally cogent reasons were that the legislature had not enacted legislation for extracounty service of original process on political subdivisions (Potts et al. v. Pittsburgh, 14 W.N.C. 38) ; and that the legislature had also failed to enact legislation whereby a money judgment could be executed against a political subdivision having extracounty situs: Lehigh County v. Kleckner, 5 W. & S. 181, 187-188; Oil City v. McAboy, 74 Pa. 249, 251. No such *general* legislation has been enacted to this date. It is therefore reasonable to infer that the statutory exceptions contemplated by the Supreme Court in adopting Pa. R. C. P. 2103(b) refer only to such venue statutes as reveal a clear and specific legislative intent to abrogate the common-law rule with regard to actions against political subdivisions."

levied on every "person [including a corporation] engaging in any business in any school district of the first class" and the tax is measured by the annual receipts realized from the business. Section 1 clearly defines what the legislature meant both by "business" and "receipts" from business. To come within the legislative language the activity considered to be "business" must (a) be carried on or exercised within the school district's territorial limits and (b) include any trade, business, profession, vocation or commercial activity or making sales to persons within the district. The legislature has defined "business" in broad and comprehensive language. "Receipts" includes "cash, credits, property of any kind or nature" if received in or allocable to the school district: the source of such receipts may be *any* business, sales made, services rendered or commercial business transactions if the situs of such activity was within the school district.

Bearing in mind that taxing statutes are subject to a strict construction and that, if there is any reasonable doubt as to their interpretation, such doubt must be resolved in favor of the taxpayer and against the taxing authority (*Dan Allen Chevrolet Co. v. Pittsburgh,* 414 Pa. 429, 200 A. 2d 388 (1964) ; *Price v. Tax Review Board,* 409 Pa. 479, 187 A. 2d 280 (1963), we must determine whether the instant factual situation places the taxpayer within the orbit of taxation under the statute. Each case in this area of the law must depend on its own facts and on an *ad hoc* basis: *Shambe v. Delaware & Hudson R.R. Co.,* 288 Pa. 240, 247, 135 A. 755 (1927).

Shorn of any embellishment of the facts, the maximum contact of the taxpayer within the territorial limit of the School District consists of the following : (a) some of its customers are located in Philadelphia; (b) one-eighth of its promotion force—three men— spend thirty percent (30%) of their time promoting

the Philadelphia customers' relationship with the taxpayer; (c) to investigate customers' complaints a "promotion man" or a metallurgist on occasion go to Philadelphia; (d) the Philadelphia telephone directory carries two listings, each of an office outside Philadelphia; (e) trade journals of general circulation, wherein the taxpayer advertised, had some circulation in Philadelphia; (f) occasionally, a metallurgist visited a Philadelphia customer to collect facts regarding the customer's need for a special type of steel; (g) sales were made with regularity to Philadelphia customers. On the other hand, taxpayers had no office or place of business in Philadelphia, all orders were transmitted *by the customers* to the taxpayer's places of business outside Philadelphia and all sales were made outside Philadelphia.

An analysis of the statute indicates that liability for the general business tax attaches only if the taxpayer is carrying on or engaging in business or a commercial activity within the school district. First, what constitutes carrying on or engaging in business or a commercial activity? The landmark decision in this area of law is *Shambe v. Delaware & Hudson R.R. Co.,* 288 Pa. 240, 135 A. 755 (1927),[4] which enunciated the so-called "solicitation plus" doctrine and held that the presence of an office in Philadelphia plus the solicitation of freight business by employees working out of such office did not constitute "doing business" in Philadelphia. In *Lutz v. Foster & Kester Co., Inc.,* 367 Pa.

---

[4] *Shambe* involved service of process. Service of process decisions dealing with what constitutes "doing business" are *apposite,* although not controlling. "Decisions relating to taxing, licensing or to state laws that impede the free flow of interstate commerce do not control the question of service of process. . . . *The degree of business activity must be greater in taxing and other situations*: 25 Columbia Law Review 1018"; *Shambe,* supra, p. 245. (Emphasis added).

125, 129-130, 79 A. 2d 222 (1951), we reaffirmed the *Shambe* doctrine and stated: "There must be 'other activities' in addition to the solicitation of business to make a foreign corporation's conduct the doing of business . . . . Such 'other activities' do not consist of acts of courtesy performed by business solicitors, without compulsion, in order to satisfy or accommodate customers. Nor do they reside in the number of solicitors employed or the character and extent of the facilities provided them for carrying on their solicitations such as office space and office equipment of desks, typewriters, filing equipment and telephones, or in the identification of the company or its representatives emblazoned on the office door or printed in the telephone directory. The criterion is, rather, whether the local solicitors have authority to bind the foreign corporation by which they are employed. . . . The orders obtained by the defendant's solicitors were not binding on the company until they were received and accepted by it at its home office in Bridgeport, Connecticut."

In *Motch & Merryweather Machinery Company v. Pittsburgh School District*, 381 Pa. 619, 116 A. 2d 733 (1955), involving the liability of a foreign corporation for a mercantile license tax, this Court reiterated and reaffirmed both *Shambe* and *Lutz*. See also: *Law v. Atlantic Coast Line Railroad Co.*, 367 Pa. 170, 79 A. 2d 252 (1951).[5] A review of the applicable case law would indicate that the "carrying on or engaging in business" set forth in the statutory law contemplates activities which involve more than a mere presence of an office and a solicitation therefrom of business or

---

[5] In this connection it should be noted that Chief Judge BIGGS in *Florio v. Powder Power Tool Corp.*, 248 F. 2d 367 (CA 3) (1957) quoted that which the lower court in *Motch* had said: ". . . Pennsylvania has a higher requirement for doing business when applied to a tax statute as compared to doing business by a foreign corporation for the purpose of service of process . . .". (at p. 370).

courtesy calls on customers. "Doing business" requires proof that the taxpayer was actually effecting sales of its products and performing acts regularly and continuously which, in a direct as opposed to an incidental manner, effects the taxpayer's corporate objects (*Shambe*, supra, p. 247).

The School District urges that, even though the taxpayer's activities do not constitute "doing business", the taxpayer falls within the category of a person engaged in "any commercial activity" within the School District. The School District cites *Steinbeck v. Gerosa*, 4 N. Y. 2d 302 (1958), *H. A. Johnson Co., Inc. v. Gerosa*, 188 N.Y.S. 2d 221 (1959) and *Panitz v. District of Columbia*, 122 F. 2d 61 (1941). While we agree with such authorities that engaging in "any commercial activity" may involve a broader concept than "doing business", yet an examination of such authorities indicates that, factually, such authorities are neither apposite and, certainly, not controlling.

Our examination of the factual situation portrayed by this record convinces us that the taxpayer was not carrying on or engaging in business or any commercial activity within the legislative intent reflected by the Act of 1949, supra, or under our case law interpretive of such legislative intent. Applying a strict construction to the statute and affording to the taxpayer the benefit of any reasonable doubt, we cannot avoid the conclusion that taxpayer's activities within the School District do not justify the imposition of this tax.

Moreover, we are satisfied that the School District has failed to prove that the "receipts" upon which the tax is sought to be imposed, constitutes "receipts" contemplated in the statutory language.

The general business tax statute contemplates a minimal nexus between the taxing district and a corporation before the latter can be subjected to taxation. The statute contemplates such activities upon the part of the corporation within the taxing district as may be

equated with an engagement in business or commercial activities within the statutory definition. Our case law, interpretative of this statute and other statutes dealing with "doing business", has delineated the type of conduct which will constitute "doing business". The instant taxpayer's activities do not rise to the standard required to make it subject to this form of taxation. Viewing the factual situation from the point of view most favorable to the School District, what were the taxpayer's activities within the taxing district? The taxpayer had some customers in Philadelphia who, on occasion, were visited by the taxpayer's "promotion men" or metallurgists, either for the promotion of good will or the investigation of complaints, and to such customers taxpayer's products were shipped to Philadelphia by common carriers, the freight being paid by the customers; taxpayer listed in the Philadelphia telephone directory its two offices outside Philadelphia, and advertised in trade journals which had some circulation within the taxing district. On the other hand, the taxpayer maintained no office, plant or warehouse in the taxing district, its personnel have no authority whatsoever to accept orders from customers in the taxing district and all sales were made and effected outside the taxing district. Under such factual picture, the evidence falls far short of establishing the statutory base justifying the imposition of this tax. Cf. *National Bellas Hess, Inc. v. Dept. of Revenue of Illinois*, 386 U.S. 753, 87 S. Ct. 1389, 18 L. ed. 2d 505 (1967).

Order reversed.

Mr. Justice COHEN took no part in the consideration or decision of this case.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

In my view a company whose receipts from sales to Philadelphia residents approximates $4,910,000 per

year is engaged in "commercial activity, or making sales to persons within such school district of the first class." General Business Tax Act of May 23, 1949, P. L. 1669, as amended, 24 P.S. §584.1. In addition, as the following excerpt from the opinion of the court below indicates, appellant's commercial contacts with the City were not insubstantial: "Alan Wood Steel Company is a Pennsylvania corporation with its only manufacturing plant located in Conshohocken, Montgomery County, Pennsylvania. Prior to June 30, 1957, it maintained an office in Philadelphia. It has five sales offices, one of which is located at 1 Bala Avenue, which is on the west side of City Line Avenue, Montgomery County, just across the boundary line of Philadelphia County. The plant and the Bala Cynwyd office are listed in the Philadelphia telephone directories and both have Philadelphia exchange telephone numbers. All of the contracts for the goods sold to purchasers located in Philadelphia are purely intrastate transactions. Three representatives of the Alan Wood Company's Bala Cynwyd office regularly call upon customers located in Philadelphia, namely, contractors and architects who use or have need for the products manufactured by the company. In addition to the sales representatives, the company employs metallurgists who consult with and advise prospective customers in Philadelphia regarding their needs and investigate customer complaints. The acceptance of the orders and the completion and shipment of the products are all controlled by the Conshohocken plant."

I dissent.

Mr. Justice EAGEN joins in this dissenting opinion.