**ALL STAFFING, INC., Petitioner**

v.

**COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 8, 2009.

Decided Jan. 5, 2010.

**850**

Paul J. Winterhalter, Philadelphia, for petitioner.

Clinton G. Smith, Sr. Deputy Attorney General, Harrisburg, for respondent.

BEFORE: BUTLER, Judge, FRIEDMAN, Senior Judge, and QUIGLEY, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

■ All Staffing, Inc. (Taxpayer) petitions for review of the April 28, 2006, order of the Board of Finance and Revenue (Board) affirming the decision of the Pennsylvania Department of Revenue's (Department) Board of Appeals to sustain the Department's assessment against Taxpayer of state sales tax, penalties and corresponding interest for the period from January 1, 2001, to May 31, 2004 (Audit Period). The Board determined that Taxpayer provided its clients with taxable "help supply services" as that term is defined by section 201(cc) of the Tax Reform Code of 1971 (Tax Code),[1] and, therefore, Taxpayer should have been collecting sales tax on its service fees pursuant to the Department's regulations at 61 Pa.Code § 60.4(a)(i). In this issue of first impression, we address the scope of "help supply services" made taxable by section 201(cc) of the Tax Code.

The facts here are not in dispute.[2] Taxpayer is a Professional Employer Organization (PEO), an entity that provides certain human resources-related services (PEO Services) to clients through the mechanism of placing the clients' employees on the payroll of the PEO.[3] This ar-

---

1. Act of March 4, 1971, P.L. 6, *as amended*, added by the Act of August 4, 1991, P.L. 97, 72 P.S. § 7201(cc).

2. The Commonwealth deposed Stanley J. Costello, Jr., Taxpayer's Chief Executive Officer and President, and, on January 14, 2009, filed Costello's deposition and accompanying exhibits with this court. In accordance with Pa. R.A.P. 1571(f), on January 13, 2009, the parties filed with this court a Joint Partial Stipu-

lation of Facts and Law, with accompanying exhibits, and the parties filed a Supplemental Partial Joint Stipulation of Facts and Law, with additional exhibits, on January 29, 2009. The parties did not identify any issues of fact remaining to be tried.

3. Taxpayer provides the following PEO Services to its clients:

rangement enables delivery of PEO Services at a competitive cost that reflects the economies of scale achieved in using one central computer payroll data system and specialized human relations knowledge for a large number of clients. (Joint Partial Stipulation (Stip.), ¶¶ 13, 17.)

Taxpayer provides its PEO Services under an Administrative Services Agreement (Agreement) with its clients, wherein Taxpayer is considered the "Administrative Employer" and the client is considered the "Worksite Employer." (Taxpayer's Ex. 9.) When Taxpayer contracts with a Worksite Employer, 100% of the Worksite Employer's employees are transferred to Taxpayer's payroll and become Taxpayer's employees. (Stip., ¶ 17.) However, just as before the transfer, the Worksite Employer retains control and direction over the day-to-day activities of these individuals and makes all hiring, firing, wage setting, disciplinary and other business and personnel decisions. (Stip., ¶ 20.) Taxpayer has no inventory of potential employees to add to the Worksite Employer's workforce, and the Worksite Employer always selects

any additions to its workforce from sources other than Taxpayer. (Stip., ¶¶ 15–16.)

The PEO Services that Taxpayer provides for its clients are performed by Taxpayer's own personnel under Taxpayer's supervision, and almost all are performed at Taxpayer's offices, away from client worksites.[4] Conversely, the clients' workers that are transferred to Taxpayer's payroll perform none of the PEO Services. (Stip., ¶ 18.) As the Administrative Employer under the Agreement, Taxpayer performs all aspects of personnel administration included within the PEO Services, thereby acting as each Worksite Employer's virtual human resources department. (Stip, ¶ 20.) The Worksite Employer pays for all costs of the worksite employees placed on Taxpayer's payroll by reimbursing Taxpayer for these employee costs. In addition, Taxpayer charges clients an administrative service fee for providing the PEO Services,[5] which Taxpayer has apportioned between the various PEO Services provided.[6] The Department's tax assess-

a. Offsite data processing services, payroll, tax filing preparation and compilation of reports from clients' data;
b. Offsite human resource assistance and benefit plan administration, including answering human resources questions from clients, preparation of employee handbooks (and offsite administration thereof), preparation of posters for work site locations to comply with federal and state work laws;
c. Offsite assistance with safety and risk management mandated by the Occupational Safety and Health Administration, including the preparation of safety manuals and posters; and
d. Offsite maintenance and administration of workers' compensation claims and unemployment compensation account administration mandated by the Pennsylvania Department of Labor and Industry.
In rendering these PEO Services, Taxpayer produces reports, manuals, tax forms and the like that are required to be provided to the "Worksite Employer," i.e., the client, under

the Agreement between Taxpayer and its clients. (Joint Partial Stipulation, ¶ 14.)

4. There are a few exceptions; for example, Taxpayer personnel run training sessions for clients' workers on site at clients' businesses.

5. Taxpayer sends its clients a comprehensive invoice for the employee costs and service fee, which the clients pay approximately two days in advance of the payroll; then, Taxpayer issues paychecks to the clients' workers. (Costello dep. at 54–55; Agreement, ¶ 3.1.)

6. The fee charged by Taxpayer on top of the reimbursed employee costs are broken down as follows:
    a) 27%—associated with offsite data processing services, etc.;
    b) 20%—associated with offsite human resources assistance, etc.;
    c) 20%—associated with offsite safety and risk management assistance, etc.;

ment relates solely to this service fee. (Stip., ¶¶ 19, 22.)

■ On December 13, 2004, after an audit of Taxpayer's business activities for the Audit Period, the Department determined that Taxpayer's PEO Services, described above, constituted taxable "help supply services" and assessed sales tax on Taxpayer's fees for those services in the amount of $149,525.80. The assessment also included a use tax of $5,765.01, penalties of $46,584.13 and interest of $15,435.16, for a total of $217,313.10. Taxpayer filed a reassessment appeal to the Department's Board of Appeals, which denied Taxpayer relief. Following Taxpayer's further appeal, the Board affirmed by order mailed on April 28, 2006. (Stip., ¶¶ 3–6, Exs. D, F.) The Board of Appeals and the Board both agreed that, because Taxpayer places all of the employees of a client on Taxpayer's payroll, its business activities fall under the definition of "help supply services" and, thus, fees for its

services were properly assessed sales tax pursuant to section 201(cc) of the Tax Code and 61 Pa.Code § 60.4(a)(i). On May 26, 2006, Taxpayer petitioned this court for review of the Board's order,[7] asserting that the Board erred in its determination. (Stip., ¶ 7, Ex. G.) We agree with Taxpayer.

Pennsylvania imposes a sales tax of six percent on the purchase price of each separate "sale at retail" of tangible personal property and certain enumerated services within the Commonwealth. Section 202 of the Tax Code, 72 P.S. § 7202. Effective October 1, 1991, the term "sale at retail" was expanded to include as one of these enumerated services "[t]he rendition for a consideration of ... help supply services." Section 201(k)(15) of the Tax Code, 72 P.S. § 7201(k)(15). Using the definition of "help supply services" under the Standard Industrial Classification (SIC) System of 1987,[8] (Supplemental Stip., ¶ 27; ex. H), the General Assembly defined the term

---

d) 10%—associated with offsite maintenance of workers' and unemployment compensation accounts, etc.;

e) 15%—used to cover clients' premium payments for various insurance policies paid by Taxpayer on behalf of its clients;

f) 5%—reimbursement for Taxpayer's legal fees incurred to keep Taxpayer current with the rules associated with its business;

g) 3%—potential onsite review and supervision of Worksite Employers' employees from time to time.

(Stip., ¶ 22.)

7. In appeals from decisions of the Board of Finance and Revenue, our scope of review is *de novo* because we function as a trial court, even though such cases are heard in our appellate jurisdiction. *Canteen Corporation v. Commonwealth,* 818 A.2d 594 (Pa.Cmwlth. 2003), *aff'd per curiam,* 578 Pa. 504, 854 A.2d 440 (2004). No record is certified to this court by the Board; questions raised by the petition for review are determined by the record made before the court or on the stipulation of facts made by the parties. Pa. R.A.P. 1571(f); 1571(h)(2). The stipulation of facts is binding and conclusive upon this court, but

we may draw our own legal conclusions from those facts. *Norris v. Commonwealth,* 155 Pa.Cmwlth. 423, 625 A.2d 179 (1993).

8. As described in the SIC manual issued by the Federal Occupational Safety and Health Administration (OSHA), help supply services are "[e]stablishments primarily engaged in supplying temporary or continuing help on a contract or fee basis. The help supplied is always on the payroll of the supplying establishments, but is under the direct or general supervision of the business to whom the help is furnished." (Supplemental Stip., Ex. H.) The SIC description lists the following examples of help supply services: *employee leasing service;* fashion show model supply service; help supply service; labor pools; manpower pools; modeling service; office help supply service; temporary help service and usher service. (*Id.*) PEOs are not mentioned.

The SIC System was discontinued in 1997 and replaced by the North American Industrial Classification (NAIC) System, maintained by the U.S. Census Bureau. (Supplemental Stip., ¶ 27.) During the Audit Period, the U.S. Census Bureau sent requests to Taxpayer

"help supply services" for purposes of the Tax Code, in relevant part, as follows:

> *Providing* temporary or continuing *help where the help supplied is on the payroll of the supplying person or entity, but is under the supervision of the individual or business to which help is furnished. Such services include,* but are not limited to, service of a type provided by labor and manpower pools, *employe leasing services,* office help supply services, temporary help services, usher services, modeling services or fashion show model supply services.

72 P.S. § 7201(cc) (emphasis added). Similarly, the Department's regulation defines a "help supply service," in relevant part, as:

> The *providing of an individual by a vendor to a purchaser* whereby the individual is an employe of the vendor and the work performed by the individual is under the supervision of the purchaser.
>
> (i) The term includes the type of service provided by labor and manpower pools, *employe leasing services,* office help supply services, temporary help services, usher services, modeling services or fashion show model supply services.

61 Pa.Code § 60.4(a)(i).[9] Taxpayer argues that the PEO Services it provides meet

asking Taxpayer to choose from a list of service categories and identify which one best described Taxpayer's business. Taxpayer selected Professional Employer Organization, to which the Census Bureau assigned NAICS 561330. Taxpayer performed some, but not all, of the activities described in NAICS 561330. (Supplemental Stip., ¶ 28, ex. H–1.) The NAIC System definition of PEOs includes employee leasing establishments as part of that industry. Specifically, NAICS 561330 describes PEOs as follows.

> This industry comprises establishments primarily engaged in providing human resources and human resource management services to staff client businesses. Establishments in this industry operate in a coemployment relationship with client businesses or organizations and are specialized in performing a wide range of human resource and personnel management duties, such as payroll accounting, payroll tax return preparation, benefits administration, recruiting, and managing labor relations. Employee leasing establishments typically acquire and lease back some or all of the employees of their clients and serve as the employer of the leased employees for payroll, benefits, and related purposes. Employee leasing establishments exercise varying degrees of decisionmaking relating to their human resource or personnel management role, but do not have management accountability for the work of their clients' operations with regard to strategic planning, output, or profitability. Professional employer organizations (PEO) and estab-

lishments providing labor or staff leasing services are included in this industry. (Supplemental Stip., Ex. H–1.)

9. The Department regulations provide the following examples of taxable help supply services:

> (1) A contractor needs immediate help and obtains the services of employes of another contractor.
> (2) Transactions between affiliated groups including common paymasters. If the gross fees and employe costs are identical, no service fee exists and no tax is due.
> (3) Transactions identified as management fees which include taxable help supply services are taxable upon the total charge unless the taxable help supply services are separately stated.
> (4) A law firm needs a secretary for a day and obtains the secretary from a vendor.
> (5) A law firm requires the services of a specialized attorney and obtains the attorney from a vendor.
> (6) A construction company requires the services of an engineer for 2 years and obtains the engineer from a vendor.
> (7) An accounting firm acquires the contract for an assignment that requires more personnel than they have available. The firm contracts with another accounting firm to provide the additional personnel required. The contract for the additional personnel is a taxable transaction. If the two firms had bid the assignment contract as a joint venture, no tax would be due.

none of the statutory requirements for taxable help supply services.

First, Taxpayer points out that section 201(cc) of the Tax Code imposes sales tax on a vendor's "providing ... help" to its customers, and Taxpayer asserts that it does *not* provide help, i.e., personnel, to any of its clients. Rather, it is the clients' payroll that is transferred to Taxpayer, thereby enabling Taxpayer to use its consolidated payroll system to provide its clients with comprehensive human resources-related PEO Services. Taxpayer notes that it has no supply of potential employees to recommend to a client and has never introduced a single new individual to a client's workforce, as contemplated by the statutory definition. Taxpayer insists that because this essential element of the definition is absent, the PEO Services provided by Taxpayer cannot be taxed as a help supply service.

Moreover, Taxpayer observes that the statute contains examples of "help supply services" to illustrate what the General Assembly meant by that term: "service of a type provided by labor and manpower pools, employe leasing services, office help

supply services, temporary help services, usher services, modeling services or fashion show model supply services." 72 P.S. § 7201(cc); 61 Pa.Code ¶ 60.4(a)(i). According to Taxpayer, the listed services all contain a common element; in each case, a vendor is providing individuals to a client to add to the clients' staff, something that Taxpayer never does for its clients. Taxpayer further asserts that the professional legal, consulting, management, accounting and payroll processing services provided by Taxpayer differ in kind from any of the temporary or continuing help services identified in the statute. Applying the statutory construction doctrine of *ejusdem generis* (of the same kind or class), Taxpayer maintains that, because the statute specifies the kinds of activities that constitute help supply services, and Taxpayer's PEO Services are not among them, Taxpayer does not provide help supply services as that term is defined.[10]

Taxpayer further asserts that, even if the PEO Services provided are construed to constitute "help," no sales tax should be imposed. According to Taxpayer, to do so would overlook a significant statutory re-

---

(8) A business with one computer operator requires another operator for 2 days a week and obtains an operator from a vendor. If the company had hired the second operator as an employe, no tax would be due.

(9) Exempt equipment rental with an operator. When equipment is exempt and the fee for the operator is separately stated, the operator fee is taxable. If the operator fee is not separately stated, the total charge is taxable.

61 Pa.Code § 60.4(d).

**10.** As further support for this position, Taxpayer relies on two prior Department rulings. In a November 8, 2005, decision, the Department concluded that pre-employment screening services are not subject to sales tax as help supply services, where no employees are recruited for, or placed with, a client by the human resource service business conducting the screening. (*See* Stip., Ex. I.) Taxpayer

maintains that, similarly, it provides a client with human relations-related PEO Services but does not place any employees on the client's payroll.

In a July 20, 2006, decision, the Department concluded that a taxpayer in the business of providing employees to perform custom computer programming services to a client's specifications at a client's place of business does not render taxable help supply services, where the taxpayer is responsible for more than just the fitness of its employees to perform a particular task but also assumes responsibility for the employees' delivery of a certain work product. (*See* Stip., Ex. J.) Thus, according to Taxpayer, its employees' preparation and production of end product reports, manuals, tax forms and the like as an integral part of providing PEO Services, takes those services out of the rubric of taxable help supply or employee leasing services.

quirement that the help supplied be under the supervision of the client. Taxpayer notes that its clients do not supervise the employees providing the PEO Services; rather, Taxpayer uses its own employees, not the clients' employees on Taxpayer's payroll, to provide the PEO Services, and Taxpayer itself supervises the employees providing the PEO Services that the Department has taxed.[11] Taxpayer asserts that, on this basis alone, the assessment cannot be upheld.

The Commonwealth counters that Taxpayer was appropriately taxed on fees it received from clients for its operation as a PEO. The Commonwealth's position is simply that, in defining help supply services, the General Assembly clearly and unequivocally requires *only* that help supplied (1) be on the payroll of the supplying entity but (2) under the supervision of the business to which the help is furnished. According to the Commonwealth, both of these criteria clearly are met here, and, consequently, the fees paid to Taxpayer represents the "purchase price" in a taxable "help supply services" transaction pursuant to section 201(cc) of the Tax Code and the Department's regulations at 61 Pa.Code § 60.4(a)(i).

However, the Department ignores the fact that it assessed sales tax only on the fees collected from the client for Taxpayer's *PEO Services,* with no tax assessed on the employee cost reimbursement paid by the client. As stipulated by the parties, these PEO Services are performed solely by Taxpayer's own employees, not by the clients' employees transferred to Taxpayer's payroll, and Taxpayer, not the clients, supervise the employees providing the PEO Services. Thus, because the PEO

Services do not fit within the statutory definition of "help supply services," the Department erred in assessing sales tax on the fees received for those services.

Accordingly, we reverse.

### *ORDER*

AND NOW, this 5th day of January, 2010, the order of the Commonwealth of Pennsylvania, Board of Finance and Revenue, dated April 28, 2006, is hereby reversed. This order shall become final unless exceptions are filed within thirty days pursuant to Pa. R.A.P. 1571(i).

---

11. Taxpayer reminds us that all provisions of a statute imposing taxes must be strictly construed, and any reasonable doubt as to their interpretation must be resolved in the taxpayer's favor. 1 Pa.C.S. § 1928(b)(3); *Alan Wood Steel Company v. School District of Philadelphia,* 425 Pa. 455, 229 A.2d 881 (1967).