## Business Tax Bureau of Philadelphia School District *v.* American Cyanamid Company, Appellant.

Argued December 1, 1966. Before BELL, C. J., MUS-
MANNO, JONES, EAGEN, O'BRIEN and ROBERTS, JJ.

*Gordon W. Gerber,* with him *Henry T. Dechert,* and
*Dechert, Price & Rhoads,* for appellant.

*Joseph W. Marshall,* with him *Edward B. Soken,*
for appellee.

OPINION BY MR. JUSTICE JONES, June 29, 1967:

On this appeal, American Cyanamid Company,
[Cyanamid], challenges the validity of an order of
the Court of Common Pleas No. 4 of Philadelphia
County which upheld the propriety of an assessment
of taxes by the School District of Philadelphia, [School
District]. These taxes were assessed and levied under

the so-called "General Business Tax" statute[1] for the benefit of the School District for the years 1960 to 1963 inclusive.[2]

Cyanamid, a Maine corporation, engaged in the manufacture and marketing of chemicals, pharmaceutical and related products, maintains its principal office in Wayne, New Jersey.[3] Prior to July 28, 1958, Cyanamid did maintain a branch office and warehouse in Philadelphia but since that date it has had no office, warehouse or other facility in Philadelphia. During the tax years in question, Cyanamid had no manufacturing plant in Philadelphia; of its 53 manufacturing plants in the United States, Cyanamid, originally, had three, and, later, two—in Latrobe and New Castle—manufacturing plants in Pennsylvania.

In July, 1958, Cyanamid opened a branch office in Fort Washington, Montgomery County.[4] The major function of the Fort Washington office is the processing of orders received from customers, either by mail or telephone. If a customer orders a product which

---

[1] Act of May 23, 1949, P. L. 1669, as amended, 24 P.S. §584.1 et seq.

[2] The City of Philadelphia, which assessed and levied mercantile license taxes against Cyanamid for the same years, intervened, as amicus curiae, in the court below.

[3] Cyanamid's home office, until May, 1962, had been in New York City. Its shareholders' meetings are held in Portland, Maine, and its directors' meetings are held either in New York City or Wayne, New Jersey.

[4] This Fort Washington facility is one of fifteen branch offices with "on premises" warehousing in the United States and it is the sole branch office in Pennsylvania. As part of the "Transportation and Distribution" division—one of nine *service* divisions which provide services for Cyanamid's eleven *operating* divisions— the Fort Washington office is supervised by a branch manager under whom are 61 office and shipping room personnel. This office services a territory which embraces four States, including Pennsylvania, parts of two other States and Washington, D. C.

is warehoused at Fort Washington, the product is shipped to the customer by mail or common carrier and payment therefor is made by the customer either to Fort Washington or to Wayne, New Jersey. If the product ordered is not warehoused in Fort Washington, the Fort Washington office requests the location where the product is warehoused to make the shipment and to bill the customer and no payment therefor is received at Fort Washington.

Insofar as presently pertinent, Cyanamid maintains two bank accounts at Girard Trust Company in Fort Washington and has no account or accounts in any bank in Philadelphia. Adjustments of customers' complaints, collections of delinquent accounts and the selection of common carriers are all handled by Cyanamid's facilities and personnel located outside Philadelphia. The Fort Washington office has a Philadelphia telephone number and is listed in the Philadelphia telephone directory for the purpose of rendering available emergency services to hospitals, etc. in connection with its pharmaceutical products. Prices for products, terms of sales, freight allowances, etc. are arranged only at the home offices of Cyanamid's nine operating divisions none of which offices are located in Philadelphia. Customers' orders are accepted or rejected only at such home offices.

A review of the record indicates the following contacts between Cyanamid and Philadelphia: (1) twelve of Cyanamid's forty-one medical representatives—whose function is to encourage and promote the use of pharmaceuticals manufactured by Cyanamid—have assignments which include geographical areas within Philadelphia and these twelve medical representatives spend approximately 5% of their time calling at hospitals and talking to medical staff members and the balance of their time is spent calling upon pharmacists; while such representatives do receive complaints and

inquiries, since pharmaceuticals are available to consumers only upon doctors' prescriptions, such representatives cannot and do not "solicit orders"; (2) four men attached to Cyanamid's "Plastics and Resins" division, who are located at the Fort Washington office, spend some time in Philadelphia;[5] it is the function of these technically trained men to promote Cyanamid's plastics and resins among the customers of Cyanamid's customers but such men are without authority to take or accept orders for such products; (3) one man attached to the Fort Washington office, who works in the "Dyes Department of Organic Chemicals" division, visits paper mills only to dispense technical information but does no work in Philadelphia; (4) two men from the Fort Washington office and attached to Cyanamid's "Pigments" division spend approximately 20% of their time in Philadelphia visiting manufacturers to demonstrate the quality and acceptability of Cyanamid's chemical pigments; (5) two men from the Fort Washington office, attached to the "Chemicals" division, call on various plants to promote the chemical products; one of such men spends about 2% of his time and the other less than 1/10 of 1% of his time in Philadelphia; (6) two men from the Fort Washington office and attached to the "Agricultural" division,— which manufactures and markets animal health products—, visits distributors to check upon the sale of products by such distributors to customers and they spend less than 1% of their time in Philadelphia; (7) of Cyanamid's other five operating divisions none have any personnel stationed in Pennsylvania, although some of the products of such five divisions are ordered by Philadelphia customers and the orders are filled from warehouses located in Pennsylvania but outside Phila-

---

[5] Of these four men, one spends 15%, two spend 10% and one spends no time in Philadelphia.

delphia; (8) Cyanamid has customers in Philadelphia who order and receive shipment of its products by mail or common carrier, Cyanamid paying the freight and the postage; (9) Cyanamid lists its Fort Washington telephone number in the Philadelphia telephone directory; (10) trade journals, which include advertisements of Cyanamid's products, circulate in Philadelphia.[6]

The School District contends that the regularity and continuity of sales by Cyanamid of its various products to customers located in Philadelphia constitutes "business" and "commercial activity" within the school district's territorial limits and that the receipts from such sales are subject to the general business tax. With this contention we do not agree. The tax theory of the School District is well expressed by Cyanamid's counsel: "[The School District] place the emphasis on *who* is in the school district, rather than *what has gone on* within the school district."

The statute which levies the general business tax must be strictly construed; if there exists *any* reasonable doubt as to its application and construction, such doubt must be resolved in favor of the taxpayer and against the taxing unit. See: *Commonwealth v. Rieck Investment Corporation*, 419 Pa. 52, 59, 213 A. 2d 277 (1965); *Commonwealth v. Willson Products, Inc.*, 412 Pa. 78, 83, 84, 194 A. 2d 162 (1963).

In *Alan Wood Steel Company v. Phila. School District*, 425 Pa. 455, 229 A. 2d 881 (1967), we recently construed the "General Business Tax" statute: "The general business tax . . . is imposed by the Common-

---

[6] From an examination of the School District's argument, one gains the impression that the *proximity* of the Fort Washington office to the territory of the School District vitally affects the taxing authority's thinking. Unfortunately for the taxing authority, the taxing statute requires activity *in*, not *close to*, the territory of the taxing authority.

wealth of Pennsylvania for the School District of Philadelphia. This tax is levied upon 'carrying on . . . within a school district . . . any trade [or] business . . . or making sales to persons within such school district' and is measured by receipts 'received in or allocable to a school district . . . by reason of any sale made' in the school district. 'Business' is defined as: 'Carrying on or exercising for gain or profit within a school district of the first class, any trade, business, including financial business as hereinafter defined, profession, vocation, or commercial activity, or making sales to persons within such school district'. (Section 1, 24 P.S. §584.1). 'Receipts' are defined as: 'Cash, credits, property of any kind or nature, received in or allocable to a school district of the first class from any business or by reason of any sale made . . . or services rendered or commercial or business transaction had within a school district of the first class'. (Section 1, 24 P.S. §584.1). . . . The Act of 1949, supra, authorizes a school district of the first class to levy and collect an annual tax, in addition to any other school tax, for general public school purposes. Such annual tax is authorized to be levied on every 'person [including a corporation] engaging in any business in any school district of the first class' and the tax is measured by the annual receipts realized from the business. Section 1 clearly defines what the legislature meant both by 'business' and 'receipts' from business. To come within the legislative language the activity considered to be 'business' must (a) be carried on or exercised within the school district's territorial limits and (b) include any trade, business, profession, vocation or commercial activity or making sales to persons within the district. The legislature has defined 'business' in broad and comprehensive language. 'Receipts' includes 'cash, credits, property of any kind or nature' if received in or allocable to the school dis-

trict: the source of such receipts may be any business, sales made, services rendered or commercial business transactions if the situs of such activity was within the school district." (pp. 459-60, 462-63) In *Alan Wood,* we further said (pp. 464-66): "An analysis of the statute indicates that liability for the general business tax attaches only if the taxpayer is carrying on or engaging in business or a commercial activity within the school district. First, what constitutes carrying on or engaging in business or a commercial activity? The landmark decision in this area of law is Shambe v. Delaware & Hudson R.R. Co., 288 Pa. 240, 135 A. 755 (1927) which enunciated the so-called 'solicitation plus' doctrine and held that the presence of an office in Philadelphia plus the solicitation of freight business by employees working out of such office did not constitute 'doing business' in Philadelphia. In Lutz v. Foster & Kester Co., Inc., 367 Pa. 125, 129-130, 79 A. 2d 222 (1951), we reaffirmed the Shambe doctrine and stated: 'There must be "other activities" in addition to the solicitation of business to make a foreign corporation's conduct the doing of business. . . . Such "other activities" do not consist of acts of courtesy performed by business solicitors, without complusion, in order to satisfy or accommodate customers. Nor do they reside in the number of solicitors employed or the character and extent of the facilities provided them for carrying on their solicitations such as office space and office equipment of desks, typewriters, filing equipment and telephones, or in the identification of the company or its representatives emblazoned on the office door or printed in the telephone directory. The criterion is, rather, whether the local solicitors have authority to bind the foreign corporation by which they are employed. . . . The orders obtained by the defendant's solicitors were not binding on the company until they

were received and accepted by it at its home office in Bridgeport, Connecticut.'

". . . A review of the applicable case law would indicate that the 'carrying on or engaging in business' set forth in the statutory law contemplates activities which involve more than a mere presence of an office and a solicitation therefrom of business or courtesy calls on customers. 'Doing business' requires proof that the taxpayer was actually effecting sales of its products and performing acts regularly and continuously which, in a direct as opposed to an incidental manner, effects the taxpayer's corporate objects (Shambe, supra, p. 247)."

In view of the factual situation presented upon this record, considered in the light of the statutory provisions, we conclude that Cyanamid's activities within the taxing district did not rise in the taxable years to the statutory level requisite for the imposition of this general business tax. The School District maintains that Cyanamid is taxable because it "has its registered address in Philadelphia,[7] has some of its sales representatives living in Philadelphia, has a Philadelphia telephone number listed in the Philadelphia telephone directories and has many sales representatives carrying on vigorous sales campaigns among physicians, hospitals, and merchants in Philadelphia on a regular, continuous and systematic basis, and in fact sells substantial quantities of its merchandise to its customers

---

[7] *Apparently*, the School District makes reference to the designation by Cyanamid, at the time it registered to do business as a foreign corporation in Pennsylvania, of the office of C. T. Corporation as the address at which process might be served upon Cyanamid. Such is not a fact *of record*. Even if it were of record, such designation is not the equivalent of being engaged in business or commercial activity in the taxing district within the statutory concept.

in Philadelphia."[8] Our examination of the present record indicates that many of the so-called "facts" upon which the School District relies are either nonexistent of record or highly exaggerated.

Even if we were to assume that the factual matrix upon which the School District relies finds support in this record, the School District still has failed to establish the liability for the general business tax of Cyanamid under both the statutory provisions and our case law. It requires no citation of authority to refute the School District's argument that simply because some of Cyanamid's personnel maintained their individual residences in Philadelphia that such fact would render Cyanamid liable for this tax. Nor is the fact that Cyanamid's Fort Washington office is listed in the Philadelphia telephone directory significant. See: *Lutz v. Foster & Kester Co., Inc.*, 367 Pa. 125, 129, 79 A. 2d 222 (1951). That Cyanamid has personnel who promote, even on a "regular, continuous and systematic basis", its products in Philadelphia simply amounts to "solicitation" which is not sufficient to equate engagement in business or commercial activity requisite under the statute for the imposition of the tax. See: *Shambe,* supra, p. 244; *New v. Robinson-Houchin Optical Company,* 357 Pa. 47, 49, 53 A. 2d 79 (1947); *Lutz,* supra, p. 129; *Motch & Merryweather Machinery Co. v. Pittsburgh School District,* 381 Pa. 619, 116 A. 2d 733 (1955). Moreover, the fact that Philadelphia customers order and purchase Cyanamid's products in substantial quantities does not in itself satisfy the statutory requirement. The School District's so-called "facts", standing alone or viewed in their entirety, do not render Cyanamid liable for this tax.

---

[8] Appellee's brief, pp. 7, 8.

The instant situation is not unlike that presented in *Alan Wood,* supra. Cyanamid maintains no facility or office of any kind in the School District area. Its personnel calling upon Philadelphia customers, actual or potential, lack any authority whatsoever to effect sales. There is no proof of record that any sales of Cyanamid's products are made in Philadelphia and, on the contrary, the record indicates that all sales are effected outside Philadelphia. All that this record portrays is that Philadelphia customers order and use Cyanamid's products and that some of Cyanamid's personnel promote the sales of Cyanamid's products within the School District area. In such a factual situation, the School District has failed to prove such engagement in business or commercial activity within the statutory language as to make receipts from sales to Philadelphia customers subject to the general business tax.

Order reversed.

Mr. Justice COHEN took no part in the consideration or decision of this case.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

This is a companion case to *Alan Wood Steel Company v. Philadelphia School District,* 425 Pa. 455, 229 A. 2d 881 (1967), decided only a few weeks earlier. I dissented in *Alan Wood* and believe that American Cyanamid is also engaged in "commercial activity, or making sales to persons within such school district of the first class." General Business Tax Act of May 23, 1949, P. L. 1669, as amended, 24 P.S. §584.1. As the majority point out each case must be decided on its own facts. Thus, as in *Alan Wood,* I am content to rely upon an excerpt from the opinion of the court below which, in my view, amply demonstrates that appellant's commercial contacts with the City were not insubstantial: "American Cyanamid is a Maine

corporation duly qualified to do business in Pennsylvania and having registered office at 123 South Broad Street, Philadelphia, Pennsylvania. Eighty to ninety percent of the products delivered to customers of American Cyanamid in Philadelphia are shipped from the warehouse in Fort Washington, Montgomery County, Pennsylvania. The branch office and warehouse there has a Philadelphia telephone number and is listed in the Philadelphia directories; it has some 19 sales representatives, 3 of whom reside in Philadelphia; they regularly call upon various businesses, professional men, druggists and others to promote the sale of the products of American Cyanamid. The prices for the products, terms of sale, allowance and ultimate acceptance or rejection of the orders is determined by the Fort Washington office. The representatives who call on the various businesses, hospitals, physicians, institutions and druggists, solicit and sometimes write orders, record complaints, answer inquiries and leave literature. For the years in question the receipts derived from customers located in Philadelphia range between approximately $1,400,000 to $2,000,000 per year."

I dissent.

Mr. Justice EAGEN joins in this dissenting opinion.