■ In the Matter of NORTH AMERICAN CAR CORPORATION, Petitioner, v STATE TAX COMMISSION, Respondent. — Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the State Tax Commission which sustained a franchise tax assessment imposed under article 9-A of the Tax Law and a license fee assessment imposed under article 9 of the Tax Law. Petitioner North American Car Corporation is incorporated in Delaware and has its principal place of business in Chicago, Illinois. Petitioner's business is the manufacture and long-term leasing of railway rolling stock, which are used by the lessees anywhere in the contiguous 48 States, Canada and Mexico. Petitioner's products are assembled in plants in Arkansas or Illinois and are then shipped by common carrier to lessees, some of whom receive delivery in New York. During the taxable years under consideration, petitioner did not own real estate in New York nor did it maintain an inventory of its products here. It did, however, maintain a New York office staffed by up to eight employees for purposes of soliciting business mainly in the northeastern United States and servicing the accounts of its customers, including a substantial number of New York-based lessees. There is ample proof in the record to support the inference that petitioner's activities in New York were far more extensive than merely soliciting orders for leases of its rolling stock. Therefore, the Tax Commission's fairly apportioned imposition of the franchise tax (Tax Law, art 9-A) and assessment of a license fee for doing business in this State (Tax Law, § 181) should be upheld. Petitioner assigned a

---

vice-president to its New York office, kept a bank account here and employed various persons in that office in nonsales capacities. Of primary significance were petitioner's activities in servicing the complaints and inquiries of its existing customers/lessees. The New York office was the exclusive liaison between the lessees and petitioner's home office on such complaints and inquiries. The importance of this service in gaining and retaining the good will of New York lessees was repeatedly emphasized in the testimony of petitioner's vice-president at the hearing. In describing the activities of the New York office, he stated: "Our activities are leasing rail equipment, period; and *servicing that equipment which we lease*" (emphasis added). These activities permitted petitioner's New York staff to gain a personal relationship with its New York customers and, in effect, gave it a local presence. As petitioner's vice-president further testified: "This is a business where warmth is important, individual relationships are terribly important, and I am the company in New York. That is it. The company exists in New York. * * * Q. If a customer has a leaking tank car, and calls the New York office, and the New York office is able to solve this for him, that customer feels like he has got something? A. Yes. Q. The customer need not know that there is a liaison person in the office calling Chicago? A. Correct." It was, therefore, not irrational for the Tax Commission to conclude that the foregoing activities gave petitioner a local nexus, which was a distinct competitive advantage over manufacturers of rolling stock who, because their in-State activities were restricted solely to the solicitation of leases, would appear to customers as being more remote and less accessible. It is precisely this type of local, personalized service that constitutes "doing business" and permits the imposition of the State franchise tax. As held in *Berkshire Fine Spinning Assoc. v City of New York* (6 AD2d 252, 259, affd 5 NY2d 347, app dsmd 361 US 3): "By channeling business through its New York office, the plaintiff gained the advantage of a local business. This was a local activity which went beyond the solicitation of business exclusively in interstate commerce for it included services rendered to its customers before and after shipment of the goods." The United States Supreme Court in *Norton Co. v Department of Revenue* (340 US 534) also stated in upholding a similar tax: "Petitioner has not established that such services as were rendered by the Chicago office were not decisive factors in establishing and holding this market. * * * This corporation could have approached the Illinois market through solicitors only and it would have been entitled to the immunity of interstate commerce as set out in the *Dilworth* case. * * * Although the concern does not, by engaging in business within the State, lose its right to do interstate business with tax immunity * * * it cannot channel business through a local outlet to gain the advantage of a local business and also hold the immunities of an interstate business" (*id.*, at pp 538-539). Finally, we also conclude that the foregoing activities of petitioner, in maintaining a permanent New York office substantially devoted to providing important, regular postsale (lease) services to existing customers, take away any exemption to which petitioner might otherwise be entitled under section 381 of title 15 of the United States Code (1970 Public Law 86-272) (see *Jantzen, Inc. v District of Columbia*, 395 A2d 29 [DC Ct of App, 1978]). These activities went far beyond what could fairly be characterized as "incidental" to the solicitation of orders. They were far more substantial than simply advising retailers on how best to promote the sale of the manufacturer's products, as in *Matter of Gillette Co. v State Tax Comm.* (56 AD2d 475, affd 45 NY2d 846). Nor were they merely "one or two corporate activities performed in a casual or infrequent manner" or an "'act of courtesy' in order to accommodate a customer" (*Indiana Dept. of Revenue v Kimberly-Clark Corp.*, 416 NE2d 1264, 1268 [Ind]). Since there is both substantial evidence and a rational basis to support the Tax Commis-

sion's determination, it should be confirmed and the petition dismissed. Determination confirmed, and petition dismissed, with costs. Kane, J. P., Main, Yesawich, Jr., and Levine, JJ., concur.

Mikoll, J., dissents and votes to annul in the following memorandum. Mikoll, J. (dissenting). I respectfully dissent. In my view, there is not substantial evidence in the record to support the determination that petitioner was doing business in New York and was therefore liable for corporate franchise taxes for the years 1953 through 1968 and the license fee for 1954. Petitioner's sales activities in the State did not exceed mere solicitation of orders. Its activities in New York State did not provide a sufficient nexus for imposition of the franchise tax or license fee (cf. *Matter of Pekao Trading Corp. v Bragalini*, 9 AD2d 559, affd 8 NY2d 903, app dsmd 364 US 478). Petitioner's New York sales staff did not have the authority to set prices, to approve leases or to decide to which of petitioner's repair facilities a railroad car should be sent. The New York sales staff acted merely as a conduit for complaints, and those acts were performed as a courtesy rendered incidentally in the pursuit of their solicitation of orders. Railroad cars leased within New York State are not under petitioner's control and the maintenance of a bank account is permitted by subdivision 2 of section 209 of the Tax Law without subjecting a foreign corporation to tax liability. Petitioner has also met the statutory criteria to prevent imposition of the franchise tax set forth in section 381 of title 15 of the United States Code (1970 Public Law 86-272). The handling of customer complaints by petitioner's New York sales people amounted to no more than acts of accommodation to customers and did not venture beyond the realm of "solicitation" (*Matter of Gillette Co. v State Tax Comm.*, 56 AD2d 475, affd 45 NY2d 846). I would, therefore, vote to annul.