Clairol Incorporated, Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

Clairol Incorporated, Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

Clairol Incorporated, Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

Argued December 12, 1984, before Judges WIL-
LIAMS, JR. and BARRY and Senior Judge BLATT, sitting
as a panel of three.

. *C. VanLeer Davis, III*, with him, *Joseph D. Hols-
ton, Jr., Dechert, Price & Rhoads*, for petitioner.

*Vincent J. Dopko*, Deputy Attorney General, for
respondent.

OPINION BY JUDGE BARRY, March 12, 1985:

Clairol Incorporated (Clairol) is appealing three
orders of the Board of Finance and Revenue. The
first of these orders refused to grant Clairol a refund
of its franchise tax for the year 1975. The other two
orders refused Clairol's request for resettlement of
its franchise tax for 1976 and 1977. The relevant
facts have been stipulated and we adopt them for the
purpose of this opinion.

Clairol is a corporation existing under the laws of
Delaware with its corporate headquarters in New
York. Its business consists of the manufacture and
sale of hair care and cosmetic products along with
small electrical appliances. During the time period at
issue, Clairol did not maintain any office, manufac-

turing plant, inventory, or bank account within this state. In fact, it did not have a Certificate of Authority to do business in Pennsylvania.

Clairol's only contact with this state was through its sales force which consisted of four district managers and approximately thirty-one sales people. The district managers were responsible for calling on retailers in order to determine their needs, display samples, distribute promotional literature and, occasionally, help them set up displays. They also assisted customers in filling out orders and conducting inventories. They supervised the sales people by accompanying them to the different stores and later correcting their presentations and making suggestions.

The sales people solicited orders by visiting wholesalers, retailers, distributors and beauty salons. They also helped their customers in writing orders, rotating their stock, taking inventories and setting up sales promotions. Five of the sales people assigned to the professional products division occasionally offered demonstrations of Clairol's products at conventions and trade shows sponsored by local distributors. All of these people operated from cars which were supplied by Clairol who leased them from national car leasing companies pursuant to contracts negotiated in New York. The cars did carry Pennsylvania license plates.

Neither the managers nor the sales people had authority to approve orders or credit. All orders were processed in Connecticut and they were filled from inventory which was kept outside of this state and shipped here through common carrier. The sales personnel did not receive any form of payment from their customers. All payments were sent to "drop boxes" outside the state. All complaints were handled by

the home office, although the sales people were authorized to replace damaged goods received by the customers. The replacement items consisted of the sales people's promotional and sample items.

Finally, although Clairol advertises extensively through television, radio and magazines, all of its advertising is national in scope and it is entirely coordinated and directed from New York City. Through the foregoing activities Clairol generated sales of its products in Pennsylvania which exceeded $20,000,000 in each of the years in question.

The issue presently before us is whether Clairol, through these activities, is *doing business* in Pennsylvania within the meaning of Section 601(a)(b) and Section 602(b)(1) of the Tax Reform Code (Code)[1] which provide in part:

> (a) The following words, terms and phrases when used in this Article VI shall have the meaning ascribed to them in this section, except where the context clearly indicates a different meaning:
>
> . . . .
>
> "Foreign entity." Every corporation, joint-stock association, limited partnership and company whatsoever, now or hereafter incorporated or organized by or under the law of any other state or territory of the United States, or by the United States, or by or under the law of any foreign government, and *doing business* in and liable to taxation within the Commonwealth or having capital or property employed or used in the Commonwealth by or in the name of any limited partnership or joint-stock association, copartnership or copartnerships, per-

---

[1] Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §§7101-1004.

son or persons, or in any other manner doing business within and liable to taxation within the Commonwealth other than nonprofit corporations, banks, savings institutions, title insurance or trust companies, building and loan associations and insurance companies is a foreign entity.

. . . .

(b) It shall be the duty of every domestic and foreign entity to make annually a written report verified in accordance with the requirements of the department on a form or forms to be prescribed and furnished by it setting forth the information required. . . . (Emphasis added.)

72 P.S. §7601(a)(b).

(b)(1) Every foreign entity from which a report is required under section 601 hereof, shall be subject to and pay to the department annually, a *franchise tax* which is the greater of (i) seventy-five dollars ($75) or (ii) the amount computed at the rate of ten mills for the calendar year 1971 and the fiscal year beginning in 1971 and each year thereafter, upon a taxable value to be determined in the following manner.... (Emphasis added.)

72 P.S. §7602(b)(1).

It is Clairol's contention that its only contacts with this state are for the purpose of soliciting orders for its products and they do not constitute doing business. The Commonwealth, on the other hand, argues that Clairol's activities go far beyond mere solicitation and therefore subject the corporation to franchise tax.

This precise question was addressed by our Supreme Court in *U. S. Tobacco Co. v. Commonwealth,*

478 Pa. 125, 386 A.2d 471 (1978). The central issue in that case was whether this state could properly charge a corporate income tax to a foreign corporation who solicited business in Pennsylvania through the use of field representatives. Although the applicable test was not whether the corporation's activities constituted doing business, the opinion focused on the definition of solicitation because the federal law[2] controlling that case prohibits any state from imposing a corporate income tax on a foreign corporation which merely solicits business within the taxing state. The activities undertaken by the field representatives in *U. S. Tobacco Co.* were essentially identical to those performed by Clairol's employees. The Commonwealth raised the same argument in that case but the Supreme Court refused to give solicitation a narrow interpretation and it expressly held that "acts of courtesy performed by business solicitors, in order to satisfy or accommodate customers" do not go beyond the rubric of solicitation. 478 Pa. at 139, 386 A.2d at 478.

The court rejected the Commonwealth's argument that the representatives' use of Pennsylvania licensed cars placed their activities beyond the scope of mere solicitation. This argument is raised once again by the Commonwealth in the case presently before us but we must also reject it because, as the court noted in *U. S. Tobacco Co.,* "[t]he representatives' means of transportation does not change the character of their promotional activities." 478 Pa. at 140, 386 A.2d at 479. We, therefore, conclude that Clairol's activities consist solely of soliciting orders for its products.

At this point the question still remains whether these activities constitute doing business within the meaning of the Code. There admittedly is little recent

[2] 15 U.S.C. §§381-384 (1970).

case law on this particular subject but the Supreme Court held in *Business Tax Bureau of the School District of Philadelphia v. American Cyanamid Co.*, 426 Pa. 69, 231 A.2d 116 (1967), that doing business consists of "solicitation plus." In that case the Philadelphia School District was attempting to subject a corporation to the city's general business tax. The applicable statute allowed the tax to be imposed only on corporations which were doing business within the school district.

This interpretation is consistent with prior Supreme Court decisions addressing the same issue in different contexts. In *Lutz v. Foster & Kester Co.*, 367 Pa. 125, 79 A.2d 222 (1951), the Court held that for purposes of subjecting a foreign corporation to a writ of summons, the corporation is not doing business unless its solicitation is coupled with other activities. In *Shambe v. Delaware & Hudson R.R.*, 288 Pa. 240, 135 A. 755 (1927), the court held that a state may not exercise jurisdiction over a corporation which is merely soliciting business because that activity alone does not constitute doing business.

The Commonwealth argues that this entire line of cases is outdated and is no longer controlling in view of three later United States Supreme Court decisions which have approved taxation of foreign corporations engaged solely in solicitation. We disagree.

We note, first of all, that these cases are not controlling because they address an issue different than the one presently before us. At this point we are simply attempting to determine whether Clairol is required to pay a franchise tax under Pennsylvania laws. The cases cited by the Commonwealth deal with situations where it has already been determined that the corporation is subject to taxation. The issue then becomes whether there is a sufficient nexus between the tax and the activities taking place within the tax-

ing state to constitutionally justify imposition of the tax. In view of our ultimate disposition of this case, we need not reach this issue.

Moreover, we find that none of the cases cited approve taxation of a foreign corporation which is merely engaged in solicitation. In *Standard Press Steel Company v. State of Washington, Department of Revenue,* 419 U.S. 560 (1975), the foreign corporation employed a full-time engineer who maintained an office within the taxing state and whose sole job was to advise customers. The taxed corporation in *Colonial Pipeline Company v. Triangle,* 421 U.S. 100 (1975), maintained pipelines and pumping stations in the taxing state. And in *National Geographic Society v. California Board of Equalization,* 430 U.S. 551 (1977), the court's approval of the tax was clearly based on the fact that, in addition to its mail order business, the taxed corporation maintained two office buildings in the taxing state. Clearly the facts in each of these three cases show that the solicitation is coupled with some other activity thereby rendering these decisions totally consistent with the Pennsylvania case law previously cited.

Based upon the foregoing, we conclude that Clairol's activities do not constitute doing business within the meaning of the Code. We, therefore, reverse the orders of the Board of Finance and Revenue and, pursuant to the stipulation of both parties, we direct the Department of Revenue to enter a credit in its books for the $32,753.75 paid by Clairol in connection with the 1975 resettlement.

ORDER IN 690 C.D. 1981

Now, March 12, 1985, unless exceptions are filed within thirty days, the order of the Board of Finance and Revenue dated February 25, 1981, at No. C-7919 is hereby reversed and the Department of Revenue is

directed to enter a credit for appellant in the amount of $32,753.75.

### ORDER IN 691 C.D. 1981

Now, March 12, 1985, unless exceptions are filed within thirty days, the order of the Board of Finance and Revenue dated February 25, 1981, at No. R-4275 is hereby reversed.

### ORDER IN 692 C.D. 1981

Now, March 12, 1985, unless exceptions are filed within thirty days, the order of the Board of Finance and Revenue dated February 25, 1981, at No. R-4276 is hereby reversed.

Judge WILLIAMS, JR., did not participate in the decision in this case.