518 A.2d 1165

**CLAIROL INCORPORATED, Appellee,**

v.

**COMMONWEALTH of Pennsylvania, Appellant.**

Supreme Court of Pennsylvania.

Argued June 3, 1986.

Decided Dec. 11, 1986.

Vincent J. Dopko, Harrisburg, for appellant.

Joseph D. Holston, Jr., Harrisburg, Gordon W. Gerber, Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

McDERMOTT, Justice.

This is an appeal from the order of the Commonwealth Court reversing the orders of the Board of Finance and Revenue which assessed a franchise tax against Clairol Incorporated (hereinafter "Clairol") for the years 1975 through 1977.[1] The parties to the instant action filed a stipulation of facts regarding the level of Clairol's business activities in the Commonwealth of Pennsylvania during the years in question. The relevant facts are as follows.

Clairol is a corporation organized and existing under the laws of Delaware. Its corporate headquarters are located in New York, its home office in Connecticut, and its manufacturing facilities are located in Connecticut and California.

---

1. Jurisdiction is vested in this Court pursuant to § 723(b) of the Judicial Code. Act of July 9, 1976, P.L. 586, No. 142, § 2 as amended, 42 Pa.C.S. § 723(b).

Clairol manufactures and sells products and small electrical appliances relating to hair and cosmetic care.

During the years in question Clairol did not possess a certificate to do business in Pennsylvania. It had no offices, plants, warehouses, or bank accounts within the Commonwealth. No subcontractors were employed nor vehicles owned in Pennsylvania; all shipments of Clairol merchandise entered Pennsylvania by common carrier.

Clairol employed no regional managers in Pennsylvania. It had four (4) district managers in the Commonwealth whose job it was to call on retailers, display samples, distribute promotional literature, help set up displays, conduct inventories of major accounts (place orders if necessary), and supervise the other salespeople. There were thirty-one (31) salespeople employed by Clairol in Pennsylvania who operated out of their individual homes and performed myriad duties. Those in the Consumer Products Division solicited orders for fifteen to twenty (15–20) accounts in Pennsylvania, visited several thousand retailers to promote and rotate products and take inventories, and provided the retailers with information on promotions. The salespeople in the Professional Products Division were responsible for soliciting orders from approximately thirty (30) distributors, visiting over eight thousand (8,000) beauty salons, and offering demonstrations of their products. Clairol also had one or two salespeople assigned to its Appliance Division who made calls on wholesale accounts only to promote sales and present special promotional deals.

Sales personnel were only reimbursed for phone calls relating to Clairol business. They did not receive any compensation for the use of their homes. No orders were accepted or approved in Pennsylvania and all credit approvals occurred outside of the Commonwealth. No payment of any kind was accepted in Pennsylvania. All advertising (print, radio and t.v.) originated in New York. Furthermore, even ads with local media affiliates were handled by agents in New York.

Based on the foregoing, the Department of Revenue determined that Clairol was subject to the Pennsylvania Franchise Tax[2] for the years 1975, 1976 and 1977.[3] This determination was affirmed by the Board of Finance and Revenue. On appeal, the Commonwealth Court reversed.

The Commonwealth Court held "that Clairol's activities consist[ed] solely of soliciting orders for its products" and thus fell short of the qualification of "doing business." *Clairol, Inc. v. Commonwealth of Pennsylvania,* 88 Pa. Comwlth.Ct. 153, 158, 489 A.2d 286, 289 (1985). Relying on several decisions which discussed the imposition of a corporate income tax on foreign corporations, the Commonwealth Court concluded that "doing business" required solicitation coupled with other activities. *Id.* at 160, 489 A.2d at 290. *See generally Business Tax Bureau of the School District of Philadelphia v. American Cyanamid Co.,* 426 Pa. 69, 231 A.2d 116 (1967); *Lutz v. Foster & Kester Co.,* 367 Pa. 125, 79 A.2d 222 (1951); *Shambe v. Delaware & H.R. Co.,* 288 Pa. 240, 135 A. 755 (1927).

In appealing the decision of the Commonwealth Court the Commonwealth argues that: the lower court incorrectly viewed the case from a perspective of "solicitation" rather than "doing business": and the Supreme Court cases relied upon by the court dealt with a *corporate income tax* and not a franchise tax. Clairol, in defending its position, rests its argument on the Commonwealth Court's holding that mere solicitation does not constitute "doing business" for purposes of the Franchise Tax.

The fundamental issue presented in the instant appeal is whether Clairol's activities in Pennsylvania during the years in question subject it to the Pennsylvania Franchise Tax as defined in 72 Pa.S. § 7601 *et seq.* Resolution of this issue

2. Act of March 4, 1971, P.L. 6, No. 2, Art. VI, § 601, *as amended,* 72 Pa.C.S. § 7601 *et seq.*

3. Clairol was liable for the Franchise Tax in the following amounts:
1975—$32,753.75
1976—$47,640.25
1977—$57,258.00

requires us to first examine the unique aspects of a franchise tax.

▪ A franchise tax is purely a tax on the right and privilege to conduct business within the Commonwealth. *See Commonwealth v. National Biscuit Company*, 390 Pa. 642, 136 A.2d 821 (1957); *Commonwealth v. Columbia Gas and Electric Corporation*, 336 Pa. 209, 8 A.2d 404 (1939); Black's Law Dictionary 593 (5th ed. 1979). Hence, a foreign corporation is not necessarily exempt from the franchise tax merely because it possesses no tangible property within the Commonwealth. *See Commonwealth v. American Gas Co.*, 352 Pa. 113, 42 A.2d 161 (1945).

Under the Franchise Tax Act a determination of whether a corporation is subject to the tax is dependent upon the following sections.

§ 7601. Valuation of capital stock

Hereafter, except in the case of corporations of the first class, nonprofit corporations, and cooperative agricultural associations not having capital stock and not conducted for profit, banks, savings institutions, title insurance, or trust companies, building and loan associations, and insurance companies, it shall be the duty of every corporation having capital stock, every joint-stock association, limited partnership, and every company whatsoever, now or hereafter organized or incorporated by or under any laws of this Commonwealth, *and of every corporation, joint-stock association, limited partnership, and company whatsoever, now or hereafter incorporated or organized by or under the law of any other state or territory of the United States, or by the United States, or by any foreign government, and doing business in and liable to taxation within this Commonwealth* or having capital or property employed or used in this Commonwealth by or in the name of any limited partnership or joint-stock association, company, or corporation whatsoever, association or associations, copartnership or copartnerships, person or persons, or in any other manner, to make annually a report in writing to the

Department of Revenue on a form or forms to be prescribed and furnished by it setting forth in addition to any other information required by the Department of Revenue.

72 Pa.S. § 7601 (amended 1983) (emphasis added).

(b) Every foreign corporation, joint-stock association, limited partnership, and company whatsoever, from which a report is required under section 601 hereof, shall be subject to and pay into the treasury of the Commonwealth annually, through the Department of Revenue, a franchise tax at the rate of ten mills for the calendar year 1971 and the fiscal year beginning in 1971 and each year thereafter, ...

72 Pa.S. § 7602(b) (amended 1983).

Thus, the General Assembly has established the standard of "doing business" as the threshold for imposing the Franchise Tax. *See* 72 Pa.S. § 7601(a) *supra.*[4] Resolution of this case involves interpreting that phrase.

The United States Supreme Court has through various decisions expounded upon the meaning of "doing business" as it applies to an excise tax.[5] The following district court decision summarizes the Court's definition of the phrase.

We note, first, that the tax is assessed upon "doing business," and business has been defined by the Supreme Court in the case of *Flint v. Stone Tracy Co.,* 220 U.S. 107, 171, 31 S.Ct. 342, 357 (55 L.Ed. 389, Ann.Cas.1912B, 1312), as follows:

" 'Business' is a very comprehensive term and embraces everything about which a person can be employed.

---

4. The franchise tax is also employed when a corporation has capital or property used in the Commonwealth in the name of that corporation. This second application is not relevant to the case at bar.

5. An excise tax is the generic term used for a tax that is not laid directly on a person or property, but on the privilege accorded that person to operate within the confines of a given jurisdiction. 84 C.J.S. Taxation § 121 (1954). The term "franchise" is defined as a corporation's right or privilege to exist and conduct its affairs in accordance with its corporate charter. A tax on that franchise, or a franchise tax, is levied for that specific privilege. *Supra,* p. 1167. *See* also, Bouvier's Law Dictionary 1299 (8th ed 1914).

Black's Law Dict. 158 (sic), citing *People v. Commissioners of Taxes*, 23 N.Y. 242, 244. 'that which occupies the time, attention, and labor of men for the purpose of a livelihood or profit.' Bouvier's Law Dictionary, vol. I, p. 273 [406].''

We note further that the decision in each case must depend upon the particular facts before the court, and that in *Von Baumbach v. Sargent Land Co.*, 242 U.S. 503, 516, 37 S.Ct. 201, 204 (61 L.Ed. 460), the Supreme Court, Mr. Justice Day delivering the opinion, had this to say with reference to the test applicable to such facts:

"The fair test to be derived from a consideration of all of them is between a corporation which has reduced its activities to the owning and holding of property and the distribution and its avails and doing only the acts necessary to continue that status, and one which is still active and is maintaining its organization for the purpose of continued efforts in the pursuit of profit and gain and such activities as are essential to those purposes."

Then, again, the Supreme Court, further dealing with this subject in the case of *Edwards v. Chile Copper Co.*, 270 U.S. 452, 455, 46 S.Ct. 345, 346 (70 L.Ed. 678), had this to say with reference to the application of this statute:

"The cases must be exceptional, when such activities of such corporations do not amount to doing business in the sense of the statutes. The exemption 'when not engaged in business' ordinarily would seem pretty nearly equivalent to when not pursuing the ends for which the corporation was organized, in the cases where the end is profit."

*Harmar Coal Co. v. Heiner*, 26 F.2d 729, 731 (W.D.Pa. 1928).

In the case at bar the Commonwealth Court relied heavily on our decision in *U.S. Tobacco Co. v. Commonwealth*, 478 Pa. 125, 386 A.2d 471 (1978); indeed the factual situations are almost classic and certainly tempting analogies. The distinction and the difference, however, is what the Com-

monwealth attempted to impose in *U.S. Tobacco* was a tax on the net income of the corporation.[6]

A tax on net income is predicated on more than mere solicitation of business, it is a tax on the profit derived from doing business. Hence, when the Commonwealth seeks to tax the income of a corporation, something more than mere solicitation is required.

■ On the other hand, since a franchise tax is not a tax on the income one receives, but on the privilege of doing business, or conducting the solicitation if you will, no more than the active presence of the corporation should be required,[7] and the tax may be imposed regardless of the resulting profit or loss.[8]

■ Under the facts of the present case that active presence certainly exists. Clairol employs a vast network of representatives in this Commonwealth, whose primary functions are to drum up business. In conducting these activities Clairol, through its representatives, employs the use of this Commonwealth's resources and derives substantial profit therefrom. Certainly, under these circumstances, it was not incorrect for the Board of Finance and Review to conclude that Clairol was "doing business" for the purpose of imposing a tax under 72 Pa.S. § 7601 *et seq.*[9]

6. It should be emphasized that the Court in *U.S. Tobacco Co. v. Commonwealth*, 478 Pa. 125, 386 A.2d 471 (1978), was construing a federal statute which proscribed the imposition of a state income tax on foreign corporations unless more than mere solicitation was involved. The Court left open the question whether, absent this statute, solicitation alone would have been a sufficient constitutional basis upon which to impose a tax.

7. For purposes of determining "active presence," the comments of Mr. Justice Day in *Von Baumbach v. Sargent Land Co.*, 242 U.S. 503, 37 S.Ct. 201, 61 L.Ed. 460 (1917) seem particularly germane, i.e., "maintaining [an] organization for the purpose of continued efforts in the pursuit of profit or gain and such activities as are essential to those purposes." *Id.* at 516, 37 S.Ct. at 204.

8. The profit or loss sustained by a corporation may be relevant in measuring the amount of the tax imposed, but it is not dispositive of the Commonwealth's ability to impose a tax.

9. The Commonwealth Court also referred to our decision in *Business Tax Bureau of the School District of Philadelphia v. American Cyanam-*

■ Clairol contends that if this Court concludes it was "doing business" in the Commonwealth then the statute itself is unconstitutional, as applied to Clairol, due to an insufficient nexus between Clairol and the Commonwealth to justify exercise of the taxing power.[10] This contention is without merit.

In *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), the United States Supreme Court addressed the issue of whether a state can impose a tax on a foreign corporation for the privilege of carrying on activities within the state, when the activities are related to the corporation's operation of an interstate business. *Id.* at 274, 97 S.Ct. at 1076. The corporation in *Complete Auto Transit* had its headquarters in Michigan and engaged in the transportation of motor vehicles by motor carrier for the General Motors Corporation. A privilege tax was assessed by the state of Mississippi upon the appellant therein for the sole activity of transporting General Motors cars from a railhead within the state to Mississippi auto dealers. The Court assumed for purposes of the opinion that the appellant's activity was within interstate commerce. *Id.* at 276, fn. 4, 97 S.Ct. at 1077–78, fn. 4.

In holding the foreign corporation accountable for the Mississippi privilege tax, the Court overruled an earlier decision which held that a state tax on the privilege of doing business is *per se* unconstitutional when applied to interstate commerce. *See Spector Motor Services, Inc. v. O'Connor*, 340 U.S. 602, 71 S.Ct. 508, 95 L.Ed. 573 (1951). Furthermore, the Court commented that:

*id Co.*, 426 Pa. 69, 231 A.2d 116 (1967), wherein we stated that doing business consists of "solicitation-plus." Again, this decision concerned the interpretation of the general business tax statute phrase "carrying on or engaging in business." The application of the "doing business" standard under the Franchise Tax requires a distinctly separate analysis.

10. Clairol alleges that if its activities consist of "doing business" in the Commonwealth, then the Franchise Tax as applied to it is violative of the Interstate Commerce Clause, Article I, § 8, of the Constitution of the United States.

"It is a truism that the mere act of carrying on business in interstate commerce does not exempt a corporation from state taxation. 'It was not the purpose of the commerce clause to relieve those engaged in interstate commerce from their just share of state tax burden even though it increases the cost of doing business.' *Western Live Stock v. Bureau of Revenue*, 303 U.S. 250, 254 [58 S.Ct. 546, 548, 82 L.Ed. 823] (1938)." *Colonial Pipeline Co. v. Triangle*, 421 U.S. [100], at 108 [95 S.Ct. 1543, 44 L.Ed.2d 1 (1975)].

430 U.S. at 288, 97 S.Ct. at 1083.

Although the Court in *Complete Auto Transit* never addressed the specific issue of nexus as raised by Clairol herein, the contention that Clairol's contacts are insufficient must fall on deaf ears. In *Bass, Ratcliff and Gretton, Ltd. v. State Tax Commission*, 266 U.S. 271, 45 S.Ct. 82, 69 L.Ed. 282 (1924), the Court upheld the imposition of a franchise tax on a foreign corporation based on the corporation's activities in the state. In *Bass* the Court concluded that "the company carried on the unitary business of manufacturing and selling ale, in which its profits were earned by a series of transactions beginning with the manufacture in England and ending in sales in New York and other places—the process of manufacturing resulting in no profits until it ends in sales—the state was justified in attributing to New York a just proportion of the profits earned by the company from such unitary business." *Id.* at 282, 45 S.Ct. at 84.

Moreover, the limited activities of a corporation's sales force within a state has been held to be a sufficient nexus to sustain the levy of a business and occupation tax.[11] *Standard Pressed Steel Co. v. Department of Revenue*, 419 U.S. 560, 95 S.Ct. 706, 42 L.Ed.2d 719 (1975).

In *Standard Steel*, the appellant, a manufacturer of industrial and aerospace fasteners, had its home office in

11. An occupation tax is analogous to a franchise tax for purposes of the discussion herein in that it is levied upon the privilege of carrying on a business or occupation. 53 C.J.S. Licenses § 1(c) (1948).

Pennsylvania, and manufacturing plants in Pennsylvania and California. In the State of Washington, it had a single employee who operated out of his home as an engineer consultant. His primary duty consisted of fulfilling the needs of appellant's principal customer (Boeing) in that state. He anticipated the needs and requirements of Boeing and followed up any difficulties Boeing may have experienced after delivery. This employee did not take any orders from Boeing; all orders were made, paid, and fulfilled outside of the state.

In upholding the State of Washington's imposition of the business and occupation tax, the Court in *Standard Steel* acknowledged that "appellant's employee, ..., with a full-time job within the State, made possible the realization and continuance of valuable contractual relations between appellant and Boeing." *Id.* at 562, 95 S.Ct. at 708.

In the case at bar, the activities of Clairol's employees within the Commonwealth far exceeded the level of business conducted by the taxed corporation in *Standard Steel.*

> [T]he "controlling question is whether the state has given anything for which it can ask return." Since by "the practical operation of [the] tax the state has exerted its power in relation to opportunities which it has given, to protection which it has afforded, to benefits which it has conferred ..." it "is free to pursue its own fiscal policies, unembarrassed by the Constitution ..." *Wisconsin v. J.C. Penney Co.,* 311 U.S. 435, 444 [61 S.Ct. 246, 249–50, 85 L.Ed. 267] (1940).

*Northwestern States Portland Cement Co. v. Minnesota,* 358 U.S. 450, 465, 79 S.Ct. 357, 366, 3 L.Ed.2d 421 (1959).

Accordingly, Clairol's nexus with the Commonwealth was constitutionally sufficient to merit the imposition of the franchise tax.

The order of the Commonwealth Court is reversed, and the orders of the Board of Finance and Review are reinstated.

86

### JUDGMENT

ON CONSIDERATION WHEREOF, it is now hereby ordered and adjudged by this Court that the Order of the Commonwealth Court is reversed, and the orders of the Board of Finance and Review are reinstated.