640 A.2d 483

The BEISTLE COMPANY, Petitioner,

v.

COMMONWEALTH of Pennsylvania, Respondent.

Commonwealth Court of Pennsylvania.

Argued Dec. 6, 1990.

Decided Oct. 24, 1991.

Publication Ordered March 30, 1994.

2

R. Scott Shearer and Lloyd R. Persun, for petitioner.

Eugene J. Anastasio and Clinton G. Smith, for respondent.

Before COLINS and KELLEY, JJ., and BARBIERI, Senior Judge.

KELLEY, Judge.

These are appeals from orders of the Board of Finance and Revenue (board) which refused petitions of the Beistle Company (Beistle) for the refund of corporate net income tax for tax years ending in 1980, 1981, and 1982, based on the untimely

filing of the claims. The headquarters and factory of Beistle are located in Shippensburg and the company maintains an office and showroom in New York City. The New York employees solicit and accept orders.

In April of 1985, Beistle was informed by the New York Department of Taxation and Finance that it was subject to the New York Corporation Franchise Tax which is computed based on corporate income. Later in 1985, Beistle filed refund claims for the tax it had paid to the Commonwealth in the years 1980 to 1984 on the basis that much of its income had been made out of state.[1] When Beistle had originally filed its tax reports with the Pennsylvania Department of Revenue (department) for those years, it did not inform the department that it conducted business in New York or elsewhere. The board granted the refunds for 1983 and 1984 but refused the others based on Section 503(a) of The Fiscal Code,[2] which states that claims for refunds must be filed within two years of the payment or settlement of the tax. This appeal followed.[3]

Beistle argues that, instead of the two year limitation of § 503(a), the board should have applied the five year limitation of § 503(a)(4) to Beistle's claims for 1980 to 1982. At the time the taxes for the years in question were paid and settled, § 503(a) read, in pertinent part:

All ... petitions for refund must be filed with the board within two years of the payment of which refund is requested, or within two years of the settlement in the case of taxes or bonus, whichever period last expired, except

. . . .

(4) When any tax or other money has been paid to the Commonwealth, under a provision of an act of Assembly subsequently held by final judgment of a court of competent jurisdiction to be unconstitutional, or under an interpretation of such provision subsequently held by such court to be

1. We explain below how this fact affects the amount of tax owed.

2. Act of April 9, 1929, P.L. 343, *as amended,* 72 P.S. § 503(a).

3. No hearing was held before the board but the parties have filed a stipulation of facts with this Court.

4

erroneous. In such case, the petition to the board may be filed either prior or subsequent to such final judgment but must be filed within five years of the payment of which refund is requested, or within five years of the settlement of such taxes, bonus or other moneys due the Commonwealth, whichever period last expires.

In 1985, the General Assembly repealed subsection (4) of § 503(a) for taxes paid or settled after January 1, 1985.[4] The parties agree that the taxes in question were paid and settled before that date.

The exception in § 503(a)(4) provided for a five year limitation on filing a refund claim where (1) the tax was paid under a provision of an act of Assembly which a court of competent jurisdiction has held to be unconstitutional, or (2) the tax was paid under an interpretation of a provision of an act of Assembly which a court of competent jurisdiction subsequently held to be erroneous. Beistle attempts to come under the second part of this exception, and thus must prove that it has been held, since the payment of the tax, by a court of competent jurisdiction, that the statute under which payment was made had been erroneously interpreted. *Federal Deposit Insurance Corporation v. Board of Finance and Revenue*, 368 Pa. 463, 84 A.2d 495 (1951).

Before we explain Beistle's argument, we must examine the definition of "taxable income" in § 401(3)2(a) of the Tax Reform Code of 1971, which reads in part:

(2) Any taxpayer having income from business activity which is taxable both within and without this State ... shall allocate and apportion taxable income as provided in this definition.

(3) For purposes of allocation and apportionment of income under this definition, a taxpayer is taxable in another state if in that state he is subject to a net income tax, a franchise tax measured by net income, a franchise tax for the privilege of doing business, or a corporate stock tax, or that state has jurisdiction to subject the taxpayer to a net

4. Section 15 of the Act of July 1, 1985, P.L. 78.

income tax regardless of whether, in fact, the state does or does not.

. . . .

(9) All business income shall be apportioned to this State by multiplying the income by a fraction, the numerator of which is the property factor plus the payroll factor plus the sales factor, and the denominator of which is three.

(10) The property factor is a fraction, the numerator of which is the average value of the taxpayer's real and tangible personal property owned or rented and used in this State during the tax period and the denominator of which is the average value of all the taxpayer's real and tangible personal property owned or rented and used during the tax period. . . .

. . . .

(13) The payroll factor is a fraction, the numerator of which is the total amount paid in this State during the tax period by the taxpayer for compensation and the denominator of which is the total compensation paid everywhere during the tax period.

. . . .

(15) The sales factor is a fraction, the numerator of which is the total sales of the taxpayer in this State during the tax period, and the denominator of which is the total sales of the taxpayer everywhere during the tax period.

72 P.S. § 7401. Thus, the portion of a company's income which is subject to tax in Pennsylvania is determined by multiplying the total income by an apportionment figure. The apportionment figure is calculated by averaging three fractions: (1) the property factor (value of property in Pennsylvania versus value of all property), (2) the payroll factor (compensation paid in Pennsylvania versus all compensation paid), and (3) the sales factor (sales in Pennsylvania versus all sales).[5] A corporation must, of course, report to the depart-

5. For an illustration of the application of this formula, see *Commonwealth v. Greenville Steel Car Company*, 469 Pa. 444, 366 A.2d 569 (1976).

ment that it has sales, property, and/or a payroll out of state in order to obtain apportionment and not be taxed on 100% of its income.

The first part of Beistle's argument concerns *Clairol v. Commonwealth,* 88 Pa.Commonwealth Ct. 153, 489 A.2d 286 (1985), *rev'd,* 513 Pa. 74, 518 A.2d 1165 (1986), and a New York case, *North American Car Corporation v. State Tax Commission,* 94 A.D.2d 880, 463 N.Y.S.2d 563 (1983). Beistle states that our opinion in *Clairol* held for the first time that solicitation of sales coupled with maintaining an office in a particular state was activity sufficient for that state to impose a tax on or measured by a corporation's net income from that state. *North American Car* is cited as the case which triggered New York's imposition of its franchise tax against Beistle. Beistle argues that these two cases resolved the erroneous interpretation that it was taxable only in Pennsylvania and established that it was taxable in Pennsylvania and in New York and that, as a result, it was required to apportion its income to Pennsylvania.

In *Clairol,* this Court held that a corporation, whose only contact with Pennsylvania was a sales force that solicited orders, was not subject to the Commonwealth's franchise tax. We did not hold, as Beistle suggests, that solicitation of sales coupled with maintaining an office in a particular state was activity sufficient for that state to impose a tax on or measured by a corporation's net income from that state. Beistle frames this statement of our holding as if we could decide what activities performed in another state subject a corporation to that state's taxes. This of course we cannot do. *Clairol* also did not hold that solicitation coupled with an office subjects a foreign corporation to the Pennsylvania corporate income tax, although our Court did analogize the "solicitation plus" standard for taxes measured by net income with the "doing business" standard for the franchise tax. The Supreme Court later reversed our decision [6] based on the reason-

---

**6.** This makes the precedential value of our *Clairol* opinion questionable, although Beistle argues that the holding which it attributes to the case was not reversed by the Supreme Court.

ing that this analogy was erroneous since a franchise tax is not measured by net income,[7] but is merely a tax on the privilege of doing business.

In any event, *Clairol* did not involve an interpretation of the act of Assembly under which Beistle paid its taxes. It involved the interpretation of the franchise tax statute as applied to a foreign corporation. Similarly, *North American Car* did not involve the interpretation of any Pennsylvania statute but of course involved the interpretation of a New York statute. Because these cases did not involve an interpretation of the statute under which Beistle paid its corporate income tax to Pennsylvania, they cannot trigger the five year limitations period of § 503(a)(4) of The Fiscal Code. *Bethlehem Steel Co. v. Board of Finance and Revenue*, 431 Pa. 1, 244 A.2d 767 (1968).

In our *Clairol* opinion, we relied on *U.S. Tobacco Co. v. Commonwealth*, 478 Pa. 125, 386 A.2d 471 (1978), in which the Supreme Court explained that a state's power to tax interstate commerce depends on the limits imposed by the Commerce Clause of the federal constitution and by a federal statute, Pub.L. 86–272, now codified at 15 U.S.C. §§ 381–384, which states that solicitation alone will not subject a foreign company to another state's income tax. This statute was enacted in response to the U.S. Supreme Court's decision in *Northwestern States Portland Cement Co. v. Minnesota*, 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421 (1959), which was interpreted by Congress as a possible expansion of the limits which the Commerce Clause placed upon the taxation of a foreign corporation such that a question existed as to whether "mere solicitation" would subject a company to a state's power to tax. 15 U.S.C. § 381 reads in part:

### Minimum standards

(a) No State, or political subdivision thereof, shall have power to impose, for any taxable year ending after Septem-

---

7. In contrast to the New York franchise tax, our franchise tax is not based on income.

ber 14, 1959, a net income tax on the income derived within such State by any person from interstate commerce if the only business activities within such State by or on behalf of such person during such taxable year are either, or both, of the following:

(1) the solicitation of orders by such person, or his representative, in such State for sales of tangible personal property, which orders are sent outside the State for approval or rejection, and, if approved, are filled by shipment or delivery from a point outside the State; and

(2) the solicitation of orders by such person, or his representative, in such State in the name of or for the benefit of a prospective customer of such person, if orders by such customer to such person to enable such customer to fill orders resulting from such solicitation are orders described in paragraph (1).

It is apparent from the plain language of this statute that a state can impose an income tax on a company whose sales personnel within that state accept orders in that state. In other words, that state has jurisdiction to impose such a tax.

■ At the time the taxes in question were paid and settled, this statement of the states' powers to tax under federal law was reflected in the board's regulation at 61 Pa.Code § 153.23, which read,[8] in part:

(a) A particular state ... has "jurisdiction to subject" the taxpayer to a net income tax, if the taxpayer's business activity in such state is sufficient to give such state jurisdiction to impose at least a net income tax under the constitution and statutes of the United States. Whether the state does in fact impose such a tax is not relevant. Jurisdiction to tax is not present where the state is prohibited from imposing the tax by reason of the provisions of Public Law 86–272, 15 U.S.C.A. [sic] §§ 381–385.

. . . .

*Example 1.* Taxpayer manufactures pin ball machines in this Commonwealth. Taxpayer has salesmen in State N

---

**8.** Section 153.23 contains substantially the same language today.

who have the right to, and do in fact, accept orders there. State N has no corporate tax statures [sic]. State N has "jurisdiction to subject" taxpayer to a net income tax because Public Law 86–272 does not apply.

Example 1 in this regulation is on point with Beistle's situation in New York. Thus, even if Beistle could argue successfully that *Clairol* and *North American Car* altered the law in Pennsylvania and New York as to what activities of a foreign corporation will subject it to tax, Beistle should have known at all times relevant to this case that New York had jurisdiction to impose a tax measured by its income from its activities in that state.

The second part of Beistle's argument concerns what used to be known as the "throw out" rule. When apportioning income under the formula in § 401(3)2(a) of the Tax Reform Code of 1971, if the sales factor was significantly lower than the payroll and property factors, the department used to use the "throw out" rule by which it would exclude from the denominator of the sales factor, sales in states which did not have jurisdiction to impose an income tax on the taxpayer. This rule was expressed in 61 Pa.Code § 153.43, which read in part:

> (b) *Exclusions: "Throw Out Rule."* An exclusion of sales from the Sales Factor may be effected in those cases wherein the statutory Sales Factor percentage is deemed by the Department to be disproportionate to the Property Factor or Payroll Factor percentages, or both, and the excluded sales are sales of tangible personal property delivered or shipped to a purchaser in a state or states wherein the taxpayer conducts no business activity which is taxable in such state or states. This exclusionary rule is commonly referred to as the "throw out rule." ... This exclusionary throw out rule is expressed by the exclusion from the denominator of the Sales Factor of those sales of tangible personal property delivered or shipped to a purchaser in a State:
>
> (1) wherein the taxpayer is not subject to a net income tax, a franchise tax measured by net income, a franchise

tax for the privilege of doing business, or a corporate stock tax; or

(2) which does not have jurisdiction to subject the taxpayer to a net income tax....

In *Paris Manufacturing Company, Inc. v. Commonwealth,* 505 Pa. 15, 476 A.2d 890 (1984), the Supreme Court overruled its earlier decision in *Hellertown Manufacturing Co. v. Commonwealth,* 480 Pa. 358, 390 A.2d 732 (1978), which had approved of the "throw out" rule. The department subsequently amended 61 Pa.Code 153.43 to eliminate the rule.

Beistle argues that in the tax years in question, because of the existence of the throw out rule and because of Beistle's belief that New York did not have jurisdiction to tax it, Beistle did not apply for apportionment of its income based on the assumption that all of its out of state income would be "thrown out", resulting in a sales factor of 100% [9] and an apportionment figure near 100%.[10]

The difficulty we face in this case is that Beistle's failure to report its out of state income appears to have been caused by two conditions. One was its anticipation that the "throw out" rule would be used in apportioning its income. Beistle correctly argues that *Paris Manufacturing* held that this rule was an erroneous interpretation of the taxing statute, and if this were the only reason that Beistle did not ask for apportionment, the five year limitation would probably be triggered. However, because Beistle's failure to request apportionment was also caused by its mistaken belief that New York did not have jurisdiction to tax it, we cannot conclude that the requirements of § 503(a)(4) of the Fiscal Code have been met. The statute does not anticipate a tax being paid because of an erroneous interpretation, *plus* some other reason. It is Beistle's burden to prove that its taxes were paid under an interpretation of the taxing statute subsequently held to be erroneous. *Federal Deposit Insurance Corporation.* Since Beistle cannot prove that the erroneous interpretation is the

---

9. We will express the apportionment factors as percentages.

10. Beistle's payroll and property factors for each of the years in question were both approximately 99%.

reason the tax was paid,[11] we hold that the board was correct in refusing the petitions for refund, and we affirm.

## ORDER

NOW, this 24th day of October, 1991, the orders of the Board of Finance and Revenue, Nos. C–15,103, C–15,104, and C–15,105, dated November 22, 1985, are affirmed.

Unless exceptions are filed within thirty (30) days from the date of this order, the Chief Clerk is directed to enter judgment in favor of the Commonwealth and against the petitioner in the amount of $445,002.00.

BARBIERI, Senior Judge, dissenting.

Most respectfully, I must dissent since I do not understand why the existence of a basis for validating the five year limitation is insufficient simply because there is another basis why the apportionment was not requested.

11.  It is apparent that Beistle would have applied for apportionment if it had known that its income was taxable in New York. When we applied the apportionment formula and the throw out rule to the income figures attached to the stipulation, our calculations showed that roughly 18% of Beistle's income would not have been taxed. Beistle's annual net income was between 1 and 1.5 million dollars for the years in question.